## Mueller, for use, *versus* South Side Fire Ins. Co.

| 87 | 399 |
|-----|-----|
| ,141 | 21 |

1. Where notice of the cancellation of a policy of insurance is given to the mortgagee of the insured premises, to whom by the terms of the policy the loss is made payable, such notice is sufficient, and it is not necessary to also notify the owner. The cancellation takes effect from the time of service on the mortgagee.

2. Where a policy reserves the right to cancel the policy at any time, on giving notice and refunding a rateable portion of the premium, an insured is not entitled to claim this rateable portion, who, at the time of notice of cancellation, had not paid his note given for the premium, which note had matured and been protested.

3. Where the policy requires the production of a certificate of an officer, before the loss is payable, and no word or act has been done by the assurer to mislead the insured or throw him off his guard, mere silence is not enough from which to infer a waiver of this condition of the policy.

October 17th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ. WOODWARD, J., absent.

Error to the Court of Common Pleas, No. 2, of *Allegheny county:* Of October and November Term 1878, No. 158.

Covenant by John F. Mueller, for use of the Rochester Building Association. against the South Side Fire Insurance Company upon a policy of insurance.

The South Side Fire Insurance Company was a corporation, doing business in the city of Pittsburgh, under the laws of the Commonwealth of Pennsylvania. On September 17th 1874, it issued its policy for the term of three years from that date, in the sum of $2000. The policy insured a two-story flour mill in Freedom, Beaver county, Penna., belonging to John F. Mueller, but by him mortgaged to the Rochester Building Association, No. 2. By the terms of the policy, it was provided: "Loss, if any, payable to the Rochester Building Association, No. 2, as their interest may appear." The premium was $180; but instead of paying it in cash, Mueller, by an arrangement with an agent of the insurance company, gave his promissory note for $180, dated September 22d 1874, payable at ninety days after date to the order of the agent. The company received the note and issued the policy. The note, however, was not paid at maturity, and was protested for non-payment. By the terms of the policy, it was provided, inter alia: "Article 1. * * * If, during the insurance, the risk be increased

[Mueller *v.* South Side Fire Ins. Co.]

by the erection of buildings, or by use or occupation of neighboring premises or otherwise, or if, for any other cause, the company shall so elect, it shall be optional with the company to terminate the insurance, after notice given to the assured, or his representative, of their intention to do so; in which case the company will refund a rateable proportion of the premium." Availing itself of this provision, the company, on March 19th 1875, resolved to and did cancel the policy, and forthwith gave notice of such cancellation to the Rochester Building Association, No. 2, which duly received such notice. No further negotiations or business with relation to the policy took place between any of the parties thereto until after December 13th 1875. At that date the mill described in the policy was totally destroyed by fire. In the meantime, in the Court of Common Pleas of Allegheny county, the insurance company, upon the petition of its stockholders, was dissolved, on August 7th 1875. No trustee, however, was appointed by the court until May 13th 1876. The plaintiff, however, claiming a right to recover under the policy, prepared what purported to be a proof of loss and left it at the private residence of Hugh Lafferty, who, prior to the dissolution, had been the president of the company. It was not denied that he received, but there was no evidence from which a waiver could be implied except *his* silence.

The plaintiff's first and third points were as follows, both of which the court, Kirkpatrick, A. L. J., affirmed:

That if the proofs of loss offered in evidence by the plaintiff were received without objection by Mr. Lafferty, who was then the sole executive officer of the insurance company, it is now too late for the defendant to allege want of compliance by the plaintiff with the ninth condition or covenant of the policy; and if the jury so find, they may further find a waiver of all objections to the proofs of loss, and in that event need give them no further consideration.

An insurance company has no right to deprive a party of his insurance simply because the premium is unpaid. And when a policy, as is the case with the policy sued on, has in it a condition reserving to the insurers the right to terminate the risk at any time on giving notice and refunding a rateable portion of the premium, the return of the premium is an essential part of the condition to be performed and a pre-requisite to the right to terminate the risk. And where there has been a note given for the premium instead of the payment thereof in money, there must either be an absolute tender of the note by the insurer to the insured or a tender upon the terms of paying the insurer the earned part of the premium, or the company must otherwise provide for the return of the unearned premium before any attempted cancellation of the risk will be operative. And if the jury find that no such tender, either absolute or qualified was made by the company, defendant in this suit, to either the legal or equitable plaintiff, and that the note was accepted by the company as payment of the premium, then the alleged cancella-

tion of the policy by the defendant was ineffectual and does not bar the plaintiff's recovery.

The first, third and fourth points of defendant, with the answer of the court, were as follows:

1. That if they believe that the defendant corporation was dissolved at No. 566, Sept. Term 1875, by the Court of Common Pleas, No. 1, of Allegheny county, Pa., on August 7th 1875, and that no trustee was appointed by the court aforesaid to settle up the business of said corporation until May 13th 1876, then between the said dates there was in contemplation of law no person having authority to waive any of the provisions of any contract or policy of insurance then in existence; nor under the facts aforesaid could any waiver be implied from the silence of said corporation.

Ans. "Refused as presented; for although he may not have been appointed by the court as a trustee to settle up the business of the corporation, yet if Hugh Lafferty was appointed by the proper authorities of the company as the person to settle up its affairs by whatever name he might have been called, he had authority to do any act or acts within the scope of his authority even to the extent of waiving any of the provisions of any contract or policy of insurance as fully and entirely as the company itself could have done; and if he in the lawful exercise of such deputed power and authority waived any contracts in the policy of insurance, the defendant company would be bound by his acts."

3. That if they believe the facts stated in the first point to be true, then there is no evidence in the case from which the jury would be justified in finding that the defendant corporation had either expressly or by implication waived compliance on the part of the plaintiff with the requirements of article 9 of the conditions of the policy sued on.

Ans. "Affirmed. The jury, however, will say from all the evidence in the case, that of R. B. Brown, the former president, and a continuing director and others, whether or not Hugh Lafferty was the proper representative of the company, duly authorized to represent it, and if so, a waiver by him would be a waiver by the company, and find accordingly."

4. That if they believe that the defendant corporation, on or about March 19th 1875, resolved to and did cancel the policy in suit and gave notice of such cancellation to the Rochester Building Association, No. 2, and that said association received said notice of cancellation prior to the date of the fire, then plaintiff cannot recover.

Ans. "Refused as presented. We are of opinion that notice to John F. Mueller was also necessary, and a refunding or tender to refund to him or the Rochester Building Association, No. 2, of a rateable proportion of the premium unearned, essential to a proper and legal cancellation of the policy."

6 Norris—26

[Mueller *v.* South Side Fire Ins. Co.]

In the general charge the court, inter alia, said:

"It was in the power of the company, as it is in the power of any company, to accept a note as cash in payment of a premium; or, as I have already intimated, if they see proper in the exercise of their discretion, they may insure without any payment at all; or they can certainly, in our judgment, receive a note as cash for a premium. If, therefore, they receive it, it was essential to their proper cancellation of this policy that they should, in accordance with the terms of one of their own articles alluding to this possibility of cancellation, have returned or tendered to one or the other of these plaintiffs a rateable amount of the unearned premiums. If, therefore, they have not so done, there is no bar in this regard to the plaintiff's recovery.

"So, too, touching again the question of proofs of loss (we have already answered it in detail in the points), it is enough to say that this insurance company may waive any informality either by long silence or by an agreement to waive the informality, and if the jury find that by any act of this company or its accredited agent and representative, if Mr. Lafferty was such, it waived this alleged informality, then that would not be any bar to a recovery; and if so finding, they find that the fire did occur (which does not seem to be disputed), that the loss did occur, and that the loss was to the full extent of the policy, there ought to be a recovery by the plaintiff in this case to the full amount of the policy, with interest."

Verdict for plaintiff for $2054.09. After a motion for a new trial had been argued and overruled, defendant took this writ and assigned for error, inter alia, the answers to the above points.

*George N. Monro* and *J. S. Ferguson*, for plaintiff in error.—If this company is to be held liable, the reason of its liability must be found either in the fact that no notice of the cancellation was given to Mueller, or because it could not cancel until after notice to the assured of its intention to cancel, or in the fact that it did not refund a rateable proportion of the premium. All of these reasons were urged in the court below by the plaintiff's counsel. As to the first reason, the association was primarily interested in the policy. Mueller himself had appointed it to take the fruits of the policy. It was his representative, and as such, a proper party under the conditions of the policy. He had no interest until it was paid. The second reason has already been decided against the plaintiff; in Carr *v.* The Lancashire Ins. Co., 27 U. C. Q. B. 217 and 453, cited in Bates' Fire Ins. Cases, 159, sect. 13.

As to the third reason, the loss was payable to the Rochester Association. It was the beneficiary. It had paid neither money nor note for the insurance. If money had been paid, the company would not have been bound to refund it, although, in that event, of course, it would have been bound to refund to Mueller. The

[Mueller v. South Side Fire Ins. Co.]

notice then terminated the rights of the association in the policy. No money was refunded to Mueller because he had paid none. It is true that the note remained in the hands of the company. But the note was no debt. It was the mere evidence of a debt.

The silence of Lafferty cannot be construed into a waiver by the company: Bumstead v. Dividend Ins. Co., 2 Kernan 81; Beatty v. Lycoming Ins. Co., 16 P. F. Smith 9; Inland Ins. Co. v. Stauffer, 9 Casey 397. As trustee he could not waive any informality or dispense with any conditions of the policy: McEvers v. Lawrence, 1 Hoff. Ch. Rep. 172.

*John H. Mueller* and *J. M. Stoner*, for defendant in error.— The note was made by a solvent and responsible person, and the company confessedly accepted it as cash, Its dishonor gave them a right of action against the maker, but no equitable or legal right to avoid the contract of insurance. If they proposed that such default should operate as an avoidance of the contract, there should have been an appropriate provision in the policy: New England Mutual Life Insurance Co. v. Hasbrook, Administratrix, 32 Ind. 447. The return of the premium is a pre-requisite to the right to terminate the risk: Hathorn v. Germania Insurance Co., 55 Barb. 28; Franklin Fire Insurance Co. v. Massey, 9 Casey 221. The acceptance of the note as payment, would certainly operate as a satisfaction of the company's claim for the premium, and be followed by all the legal consequences of an actual payment in cash. It has been held, as matter of law, to be payment: Barker v. North Brit. Ins. Co., 8 S. & D. 869. The proofs were received by Mr. Lafferty without objection, retained by him afterwards and produced by the company's counsel on the trial. There was no intimation of the alleged defect until after suit was brought. That Mr. Lafferty had plenary powers in the management of the business of the company, cannot be successfully denied. The testimony of R. B. Brown, Esq., fully warranted the finding suggested in the plaintiff's point, that Mr. Lafferty was the sole executive officer of the company. These facts justified the court in submitting to the jury the question of waiver: McMasters v. Westchester Co., 25 Wend. 379; O'Neil v. Buffalo Fire Ins. Co., 3 N. Y. 122; Vandeusen v. Charter Oak Ins. Co., 1 Rob. (N. Y.) 55; Bilbrough v. Metropolis Ins. Co., 5 Duer 587; Bailey v. Hope Ins. Co., 56 Me. 474; Firemen's Ins. Co., v. Crandall, 33 Ala. 9.

Mr. Justice TRUNKEY delivered the opinion of the court, November 11th 1878.

Mueller's policy was for the term of three years from the 15th September 1874, for a premium of $180. It contained a stipulation that for any cause " it shall be optional with the company to terminate the insurance after notice given to the assured or his

representative, of their intention to do so; in which case the company will refund a rateable proportion of the premium." This provision was also inserted, to wit: " Loss, if any, payable to the Rochester Building Association, No. 2, as their interest may appear." The said association took and retained possession of the policy until after the fire. Mueller gave his note, dated September 22d 1874, at three months, for the premium, which was protested for non-payment. On the 19th March 1875, the company cancelled the policy and served notice on its holder as follows : " You are hereby notified that policy No. 1644, issued to John Mueller by this company, on the 15th of September, is hereby cancelled for non-payment of premium." To this no response was made. The property insured was destroyed on the 14th of December 1875.

Notice of cancellation was requisite upon Mueller or his representative, not on both. No one could better answer as representative than he who had the custody of the policy and would be entitled to the money in case of loss. The notice was sufficient, and the cancellation took effect from the service. Had the premium been tendered and refused, within a reasonable time, a question might exist which is not now in the case. There was no offer to pay. It is said the policy remained valid because the company did not refund a rateable proportion of the premium. Non-payment of the premium was the very cause of cancellation. Refund what ? The evidence of a broken promise to pay ? The company had received no money. No legerdemain could make that protested note appear as cash. Mueller had no right to the note until payment of the proportionate part due when the policy ended. It was his paper, received and held by the company, between them a mere contract subject to any legal or equitable defence. The insured has no just ground for complaint. For three months his note stood as if a payment of the premium ; for three months longer the policy was permitted to continue in force; and for nine months after the cancellation he was content. At no time did he tender or offer to pay a dollar for restoration of the policy. Too often insurance companies set up technical and trifling defences against payment of losses ; but that is no reason for holding a policy valid after its cancellation according to the terms of the contract, and a long neglect by the insured to pay the stipulated price for the insurance.

Another point may be noticed. The ninth condition of the insurance provided that the loss should not be payable until the production of a certificate of an officer as therein directed. It is alleged that production of the certificate was waived. Let it be conceded that Lafferty was duly authorized to act for the company. Also that silence under many circumstances may be evidence of a waiver. As where payment is refused for a specified cause ; or where a defect is pointed out in proofs and certificates; or where, after receipt of proofs, the company act upon them as if correct in treat-

[Mueller v. South Side Fire Ins. Co.]

ing with the insured; or where the company resort to and agree upon another mode of ascertaining the loss; waiver as to a defect, not the ground of objection, refusal or action, may well be inferred from silence.  But where no word or act has been said or done by the assurer to mislead the insured or throw him off his guard, mere silence is not enough to infer waiver: Beatty v. Lycoming Co. M. Ins. Co., 16 P. F. Smith 9.  Mueller left the papers with Lafferty's wife, and he received them from her.  There was no communication between them, orally or in writing.  Lafferty did nothing. There was no evidence of waiver to submit.

Judgment reversed.