The opinion of the court was delivered by
Blanchard, J.
This is an action on a policy of insurance against fire, underwritten by defendant company, in the sum of ten thousand dollars, on the sugar house on the Magnolia plantation, in Rapides parish, and on the fixed and movable machinery contained therein.
The property insured was destroyed by fire on the 17th of April, 1895.
Proofs of loss appear to have been made on blanks furnished by the company and were delivered to defendant. Payment was declined, and on September 5, 1895, this suit was instituted.
Three defences are set up in the answer, viz.: concealment of incumbrances existing on the property at the time of insurance, the taking out of other insurance in violation of alleged stipulation to the contrary in the policy, and the failure of the insured to furnish timely proofs of loss.
*1369 The first and last of these defences were abandoned — at least not insisted on in argument.
Plaintiff’s recovery is strenuously resisted, however, on the second ground of defence — the taking out of “other insurance; ” and from a judgment in his favor, this appeal is taken.
The facts pertinent to the issue are these:
The Magnolia plantation had been the property of S. S. Pierce. In June, 1891, he mortgaged the place to Caldwell & Judah, of Memphis, Tenn., to secure the sum of twelve thousand six hundred and seventy-five dollars. One of the stipulations of this mortgage was that the mortgagor bound himself to keep the building on the premises insured for not less than six thousand dollars; the policy to be made payable to the mortgagees and delivered to them; and in event of failure of mortgagor to do this, the mortgagees were authorized to take out such policy, pay the premiums, and the money paid for premiums was to be considered as added to the indebtedness and secured by the mortgage.
The commercial firm of Flower & King recovered a judgment against Pierce, and under a writ of fieri facias issued thereon seized .and sold the Magnolia plantation. At this sheriff’s sale, which took place on December 2, 1893, Clifton Cannon, plaintiff herein, purchased the property for the sum of twenty-six thousand seven hundred dollars and fifty-three cents. The sheriff’s deed recites that this sum was settled by the purchaser retaining in his hands six thousand eight hundred and ninety dollars and fifty-three cents to pay a special mortgage in favor of M. Levy’s Sons., ten thousand six hundred and thirty dollars to pay a special mortgage in favor of ■Caldwell & Judah, eight thousand eight hundred and fifty-eight dollars and eighty-five cents to pay a special mortgage in favor of G. W. Bennett, and by paying the remainder of the purchase price, three hundred and sixeen dollars and fifteen cents, in cash, these several sums aggregating the amount of Cannon’s bid.
It does not appear that Cannon took out any insurance on the buildings of the Magnolia plantation until October 24, 1894, when •the policy now sued on was taken out for six months. Nor is it established by the evidence that any insurance was taken out by any ■of the mortgage creditors of the plantation on the buildings thereof, from the time of Cannon’s purchase down to March 24, 1895, when -Caldwell & Smith (successors to Caldwell & Judah) took out a policy *1370 for six thousand dollars in the Orescent Insurance Company on the sugar house and machinery of the Magnolia plantation. This policy was taken out in the name of Clifton Cannon, owner of the plantation, but was assigned to the Edinburgh-American Land Mortgage Company, Limited, and loss, if any, was made payable to them.
This mortgage company appear to have been the assignees of the Caldwell & Judah mortgage upon the Magnolia plantation, and Caldwell & Smith were their agents at Memphis, Tenn., where the insurance in the Orescent Insurance Company was effected.
The policy in the defendant company, which Cannon had taken out, was for his own account.
That taken out by Caldwell & Smith, on the same property, in the Crescent Insurance Company, was, in effect, for account of the mortgage creditors they represented, though in taking it out they used Cannon’s name..
There was no authorization from Cannon to Caldwell &»Smith to take out this policy in his name, nor to take it out at all. The application for the policy was made to the insurance company by Caldwell & Smith, not by Cannon.
• Caldwell & Smith wrote Cannon, on March 27, 1895, that they had “ taken out six thousand dollars for one year,” and asked him what other insurance he had upon the building.
In this letter they did not mention what company this insurance had been effected in, nor did they inform Cannon that it had been written in his name.
The only answer Cannon made to this was an acknowledgment of receipt of the letter, and the statement that he had ten thousand dollars insurance on the sugar house, which would expire April 24, and that, thereafter, he intended taking out a smaller policy, “ as the grinding season will be over.”
On April 1, 1895, Caldwell & Smith wrote again to Cannon, informing him that they had taken out six thousand dollars insurance, and this time mentioned that it had been taken out in the Orescent Company ; that the premium was one hundred and eleven dollars, and that they would have endorsed on the policy ten thousand dollars concurrent insurance.
Again was there a failure to inform him that the policy had been taken out in his name, and it nowhere appears that he knew, up to the time of the Are, that the policy of the Crescent Insurance Com *1371 pany had been issued in his name. It seems that the day after the fire Cannon wrote Caldwell & Smith, announcing the loss of the sugar house. They replied expressing regret at his-misfortune, again stating that they held six thousand dollars in the Crescent Company, and had informed the company of the loss by fire.
Some ten days after the fire Cannon had an interview with the president of the Orescent Insurance Company about the loss with the view, it seems, of its adjustment. Before the company would proceed with negotiations looking to an adjustment, Cannon was required to sign an agreement to the effect that an investigation looking to a settlement of the loss should in no wise prejudice the rights of the insurance company to raise objections to other questions which might be involved, nor be held to waive any of the stipulations of the policy of insurance.
But he went no further in the attempted collection of this policy.
He did not file any claim in respect to it, either at that time or subsequently, and it seems that the mortgagees themselves have not made any effort to collect the policy.
The question presented for decision is whether the insurance effected by Caldwell & Smith in the Orescent Insurance Company is “ other insurance ” in the sense prohibited by the terms of the policy issued to Cannon by the defendant company.
We do not think it is.
This second insurance was not taken out by procurement of plaintiff, and he can not be held to have had any interest in it.
The only parties in interest in this policy were the holders of the Caldwell & Judah mortgage upon the Magnolia plantation. These mortgagees might have taken out this insurance in their own names, and it does not help defendant’s case that they chose to take it out in plaintiff’s name, making the loss, if any, payable to themselves. The use of plaintiff’s name did not make the interest thereby insured his. It was none the less the interest of the mortgagees that was thus covered.
In the policy of insurance sued on defendant company had not stipulated that other parties having distinct insurable interests should not exercise that right, and that a mortgagee, or creditor having a lien on property, has an insurable interest is well understood. Bell vs. Insurance Co., 5 R. 423.
Having such insurable interest, it did not lie in the power of *1372 defendant to prevent the mortgages, the Edinburgh-American Land Mortgage Company, Limited, from effecting insurance for their account on the property.
What amounts to “ other insurance ” is stated by May on Insurance, Sec. 365, to be additional and valid insurance, prior or subsequent, upon the same subject, risk and interest, effected by the same insured, or for his benefit, or with his knowledge or consent.
“ Neither, identity of name or identity of property is decisive upon the question. In order to amount to other insurance the interests covered by the policies must be identical.” Wood on Fire Insurance, Secs. 377, 374.
Insurance by a mortgagor and also by a mortgagee, for their individual benefit, is not “ other insurance.” Acer vs. Merchants Ins. Co., 57 Barb. (N. Y.) 68.
Where a consignor of a vessel effected an insurance on the freight with the warranty “ no other insurance,” and the consignee who had accepted a draft against such freight without instructions from the consignor effected another insurance on the freight at the place of destination, it was held that this last insurance could not be considered a violation of the warranty contained in the former. Williams vs. Crescent Mutual Insurance Co., 15 An. 651.
The contention of defendant that plaintiff’s consent to the second insurance must be presumed from the obligation he was under to fulfil the stipulations of the mortgage executed by S. S. Pierce upon the property in favor of Caldwell & Judah is equally unfounded. So, too, the contention that Caldwell & Smith, in procuring the second insurance, acted as the agent of plaintiff, and that plaintiff subsequently ratified their act.
The well considered case of Titus vs. Insurance Co., 81 N. Y. 415, announces a doctrine, which we approve, at variance with these contentions, and so far as the application of that doctrine to the facts of the instant case is concerned, we fail to appreciate that the well understood difference between a common law mortgage and a civil law mortgage insisted on by defendant has any bearing.
The liability of defendant attached when the fire, which destroyed the sugar house, occurred.
Up to that time there had been nothing done by the plaintiff that can be fairly construed into ratification of the act of Caldwell & Smith in taking out the insurance in the Crescent Insurance Company in his name. It is not shown that he knew of such insurance effected *1373 in his name. But it is urged with great ability and force of argument on part of defendant that what the plaintiff did after the fire and after liability of defendant had attached, in conferring with the official of the Orescent Insurance Company with the view of the adjustment of the loss, constituted such ratification, which goes back to the very inception of the contract. The effect of this argument, if sustained, would be to defeat the liability of defendant company after such liability had accrued through the burning of the sugar house, by conduct of the plaintiff subsequent to the fire. We cannot sanction this contention. There was no ratification by plaintiff, of the taking out by the mortgagees of this second insurance, in such way as to make the act of procuring it his act. He did nothing affecting this policy until after the right of the parties had become fixed, and what he then did was merely preliminary to the filing of a claim, which was never filed. Even if he had filed a claim and made proof of loss,'the money could not have been paid to him. By assignment endorsed on the policy, the loss was made payable to the mortgagees and they alone could have collected the money.
If the act of procuring that insurance did not at the time operate to avoid the contract sued on, it could not after the loss have such operation by relation.
Nor can we sustain the last contention of defendant, which is, that in the event the validity of the policy of insurance declared on is maintained, defendant company can only be held liable “ for its proportion of the loss according to the amount hereby insured shall bear to the whole insurance, whether valid or not, covering such property.” In other words, it is insisted that the policy in the Crescent Insurance Company must be taken into consideration in making the estimate of the amount for which defendant is liable. We have already shown that the policies, in effect, covered different interests in the property.
And we understand the rule to be that a provision for apportionment of the loss, where there is no other insurance, applies only to cases where the insurance covers the same interest. If the mortgagor and mortgagee each have separate insurance, covering their respective interests, the condition for apportionment does not apply. Niagara Fire Insurance Company vs. Scammon, Ill. 19 L. R. A. 114; 28 N. E. 919; Fox vs. Phœnix Insurance Company, 52 Me. 333.
The judgment appealed from is affirmed.