## JORDAN v. COMMERCIAL UNION FIRE INS. CO. OF NEW YORK.*

No. 16256.

Court of Appeal of Louisiana. Orleans.
April 20, 1936.

St. Clair Adams & Son, of New Orleans, for appellant.

Henican & Carriere and Ellis Henican, all of New Orleans, for appellee.

JANVIER, Judge.

This is a suit on a policy of fire insurance. The main defense is that the policy had been legally canceled by the insurer before the fire occurred.

Samuel Jordan, plaintiff, alleging that a building owned by him and covered by the policy in question has been totally destroyed, seeks to recover from defendant company $1,000, together with certain stat-

utory penalties and attorney's fees and costs.

Defendant admits that the policy of insurance was issued, and the record shows that the building was totally destroyed by fire. Attached to the policy is a "rider" known as the New York standard mortgage clause, which provides that the loss, if any, shall be paid to Liberty Homestead Association, as its interest may appear.

The main contention of defendant insurer is that the policy herein sued on was canceled by it long prior to the occurrence of the fire. There are other defenses and contentions to which we shall later refer.

The homestead association held a mortgage on the property of Jordan, granted by him on September 30, 1926; the notarial act containing the following stipulation in which the said Jordan is referred to as "purchaser": "The said purchaser further agrees to keep the buildings and improvements now existing or hereafter to be erected on said lot of ground constantly insured against loss by fire, in some good and solvent insurance company of this city, up to their full value, and until full and final payment of said note, and to transfer and deliver the policy or policies of such insurance or insurances, unto said Homestead and its assigns, in default whereof the said Homestead and assigns is and are hereby authorized and empowered to cause such insurance to be made and effected at the cost, charge and expense of said purchase. * * *"

The record shows that it was extremely difficult for Jordan to obtain insurance on the building, due apparently to the fact that it had never been fully completed, and it appears that, because of this difficulty, the assistance of the homestead association was required to prevail upon some insurance company to assume the insurance risk.

Various policies of insurance were in force between the date of the mortgage in 1926 and the time at which the policy in question was issued in 1932, and, in all probability, all of these other policies, including the one sued on, were issued by the various insurers at the request of the homestead association, mortgagee.

When the policy sued on was issued in 1932, the agent of defendant insurer wrote to Jordan a letter inclosing a copy of the policy, the original of which had been sent to the homestead association as the holder of the mortgage, and thanking Jordan for the placing of the insurance.

This policy was written for a term of three years, which term extended beyond the date on which the fire subsequently occurred. The premium for the full 3-year term was paid.

Some time later, and long before the occurrence of the fire, the insurer, Commercial Union Fire Insurance Company of New York, decided to terminate the policy, and, through its agent, it gave notice of this intention to the homestead association, remitting to that association the proper return premium and securing from it the original policy.

It is conceded that it gave to Jordan no notice of the proposed cancellation. When the homestead association accepted from the insurer the notice of cancellation, it did not advise Jordan thereof, but proceeded to obtain insurance protection from another company. Still later, on one or two occasions, it permitted the cancellation of subsequently secured policies and in each instance obtained a new policy or new policies until, at the time of the fire, it had in its possession two policies each for the sum of $250, making a total of $500, whereas the policy sued on is for $1,000.

It appears that these various transactions were not brought to the attention of Jordan until after the fire, though it is shown that the premiums paid were charged to him on the books of the homestead association, and that his account was credited with the various return premiums which were paid to the homestead by the respective insurance companies.

The contention of the insurer now is that the policy sued on was fully canceled by the notice given to the homestead association followed by the return by that association of the original policy. Of course, the insurer, by policy provisions, was given the right to cancel the policy with or without cause upon giving proper notice of its intention to do so, so that on this feature of the case the only question involved is whether proper notice was given.

It is not denied that the policy requires that, the insurer, intending to cancel, must give notice to the "insured"; but it is contended that because of the right given in the act of mortgage to the mortgagee, and because of the custom established between Jordan and the homestead association, the latter, as mortgagee, was, in effect, constituted the agent of Jordan for the general purpose of attending to all of his insurance transactions involving the property in ques-

tion, and that as a result of this "agency" the homestead association, mortgagee, was authorized to accept notice of cancellation.

As supporting this view that a mortgagee with the right to "place" insurance or to "keep" the mortgagor's property insured is constituted agent for the purpose of accepting notice of cancellation, counsel for defendant point to the following quotation from Couch's Cyclopedia of Insurance Law, volume 2, § 474, p. 1345: " * * * It has been broadly held that an insurance agent to 'place' insurance has authority to accept cancelations and to procure replacements, so as to render the insurers writing the replacement policies liable in case of loss. So, if an agent has the policy in his possession, it may be inferred that he has authority to receive notice, even though he be only an agent to procure insurance. * * * And if an agent is authorized by the owner of property to procure insurance, and to keep the property insured, it is generally held that such agent has authority to accept notice of cancelation and to transfer the canceled risk to another company. * * * Likewise, if a broker has been accustomed to act as general agent in regard to matters of insurance for another, and is vested with discretionary powers in relation thereto, and the company charges the broker with the premium, and the policy remains in its hands, notice of cancelation to such broker is sufficient. And a broker who is authorized to keep the owner's property insured by taking out policies, renewing them, paying premiums thereon for the owner, and obtaining other insurance in lieu of expired or canceled policies, which course of dealing has been carried on for some time, is a general agent of the owner in such matters, and the owner is bound by notice of cancelation given to such broker. * * *"

■ Counsel for plaintiff maintain that we are not concerned here with the authority of one granted the right generally to look after and maintain insurance for another, though they do not concede that even such authority includes, in all cases, the right to accept notices of cancellation. They point out that what is involved here is that very limited authority which is usually vested in the holder of a mortgage not to protect and look out for all the insurance interests of the mortgagor, but solely to see that insurance is procured if the mortgagor himself fails to secure it. They point particularly to the following language also found in Couch's Cyclopedia, supra, volume 6, § 1423, p. 5060: "The general rule is that

the mortgagee of property is without authority to cancel, surrender for cancellation, or consent to cancellation of, a policy of insurance covering the property, without the consent of the owner, so as to defeat the right of the latter to recover against the insurance company for a loss subsequently occurring, and this notwithstanding the fact that the mortgagee has possession of the policy; or that the policy contains the clause providing in effect that the loss, if any, shall be paid to the mortgagee; or that the mortgagee is permitted to keep up the insurance, premiums paid to be added to the principal sum due."

Defendant cites several cases as authority for the view that one who is authorized to act as agent for general insurance purposes may accept notice of cancellation. But, again, plaintiff's alert counsel show that in each of the cases cited it appears that there was authority generally to represent the owner in all insurance matters, and that in each, also, there was recognized the principal that where the authority granted is limited, either expressly or by implication, to the procuring of insurance, it cannot be extended so as to include the right to effect cancellations, to assent thereto, or to accept notices thereof.

In Buick v. Mechanics' Insurance Company, 103 Mich. 75, 61 N.W. 337, relied on by defendant, is found a case in which an owner constituted another his general agent for insurance purposes, but even there the court recognized the well-settled rule that "authority to procure insurance does not imply authority to consent to cancellation, so as to bind the assured. * * *"

Similarly in Hollywood Lumber & C. Company v. Dubuque Fire & Marine Insurance Co., 80 W.Va. 604, 92 S.E. 858, 860, the owner by agreement had left the "management of his insurance" to designated agents. However, even in that case the court was careful to point out that where there is no such general authority "notice of cancellation to an agent to solicit or procure insurance is not notice to the insured of such cancellation; that his authority ends with the contract of insurance."

Nor can Sterling Fire Insurance Company v. Comision Reguladora, 195 Ind. 29, 143 N.E. 2, afford comfort to defendant, for there also the authority to accept notices of cancellation was held to result from the fact that the authority granted included the right to maintain and keep up insurance. There also it was found

that several prior cancellations had been effected by the agent to the knowledge of the owner of the property.

On the case of Mueller v. South Side Fire Insurance Company, 87 Pa. 399, defendant places much reliance. It is true that there it was held that a notice of cancellation served on the mortgagee alone was sufficient. But the policy provided that the notice of cancellation might be served either on the insured or on his representative, and the court held that the homestead association could be considered as the representative of the insured.

Here it is not denied that the notice was required to be served upon the insured.

A reading of many authorities shows that the Mueller Case has, in most of them, been distinguished on the ground above mentioned. For instance, it is referred to in many cases as is shown in a footnote to Jones et al. v. Dubuque Fire & Marine Insurance Co., 317 Pa. 144, 176 A. 208, 209, which footnote reads as follows: "Mueller v. South Side Fire Insurance Company, 87 Pa. 399, is not in conflict. The mortgagee therein was expressly found to be the agent of the mortgagor to receive the notice of cancellation. * * * The weight of authority holds that notice to one of several having an interest under a policy is insufficient."

Counsel for plaintiff, on the other hand, cite several cases turning not upon the broad general rules governing principals and agents for which defendant contends, but going to the finer, more specific question concerning the effect on the principles of agency of the general relationship of mortgagor and mortgagee. They contend that this relationship does not in any sense confer any general authority on the mortgagee to represent the mortgagor in insurance matters, and that any authority which does result is limited to the doing of such things as are made absolutely necessary by the relationship or as are specifically set forth in the act of mortgage.

They show, for instance, that where, as here, the authority is limited to the procuring of the insurance only on the "default" or "failure" of the mortgagor, the mortgagee has no right at all except upon such "default" or "failure."

For example, in Phœnix Insurance Company v. American Trust & Savings Bank et al. (Tex.Civ.App.1923) 248 S.W. 819, 821,

it was held that the right given "to keep up the insurance" could not be interpreted as including the authority to "waive notice * * * of the cancellation of or surrender of the policy for cancellation."

In Continental Insurance Company v. Parkes, 142 Ala. 650, 39 So. 204, the court held that the mere possession of the policy did not confer the right to surrender it for cancellation.

In Edwards v. Sun Insurance Co., 101 Mo.App. 45, 73 S.W. 886, 888, the court likewise held that the possession of the insurance policy does not authorize the possessor to consent to the cancellation. The court further said: "Notice of cancellation must be given to the insured, or to some agent whose general or special powers are sufficient to render notice to him equally effective."

In McDonald v. North River Insurance Company, 36 Idaho, 638, 213 P. 349, 350, the court compared the relationship of the parties with that which exists between mortgagor and mortgagee, and said: "Of this relationship appellant [insurer] had full notice when the policy was issued, and made the same payable to respondent and Folts Motor Car Company as their interest might appear. Under these circumstances, notice of cancellation of the policy to, or the surrender of the policy by, the Folts Motor Car Company would not be notice to respondent, neither would a surrender of the policy by the Folts Motor Car Company defeat his right to recover thereon."

In Bache v. Great Lakes Insurance Company (1929) 151 Wash. 494, 276 P. 549, is found a case which, on certain points, cannot be distinguished from the case at bar. There the court said: "Some contention is made in behalf of the People's National Fire Insurance Company rested upon the theory that the exercise of the claimed agency authority of the association in procuring the four new policies from the defendant companies in place of the existing policy of the People's National Fire Insurance Company, was in accordance with a custom binding upon Bache and wife, mortgagors. The evidence fails to show that the original owner mortgagors or Bache and wife, their successors in interest, had any knowledge of any such custom, nor is the evidence such as to bind them to any such general custom, though there is some evidence that the association did often cause new insurance to be writ-

ten in place of expiring insurance to become effective upon the expiration of the expiring term, without consulting its mortgagors." See, also, Jones et al. v. Dubuque Fire & Marine Insurance Company, supra.

The view that authority to secure insurance does not include the right to cancel or to agree to cancellation has been adopted in this state, as is evidenced by the decision of our Supreme Court in Leon Irwin & Company, Inc., v. Board of Commissioners of Port of New Orleans, 176 La. 13, 145 So. 123.

■■ The rule then very plainly is that the authority to procure insurance or "to keep up" insurance does not, without special authority as to cancellation, authorize the acceptance of notice of cancellation. It becomes necessary then to investigate the policy and the act of mortgage to determine whether or not there was any specific authority granted to the mortgagee touching upon its right to accept notice of cancellation. In neither of the documents, to which we have referred, is there set forth any such special authority.

The policy merely requires that notice of cancellation be given to the insured and the act of mortgage contains nothing giving to the mortgagee any authority with reference to cancellation; being limited solely to a delegation of the right "to keep the buildings and improvements * * * constantly insured against loss by fire if the mortgagor fails to do so."

There is nothing in the record from which we may reach the conclusion that Jordan, the mortgagor, had any knowledge of any prior cancellations which may have been effected by or assented to by the mortgagee, if there were any such cancellations. He knew that he was being charged premiums, and he knew that his property was insured. He had no reason to know that any policies which may have been previously issued had been canceled prior to their stipulated terminations.

We conclude that the defendant has not sustained the burden which is placed upon it by the defense which it has chosen to set up. If it desired to cancel the policy, it was its right to do so upon compliance with all policy provisions and conditions. One of the conditions was that notice of its intention to cancel should be served on the insured. If it saw fit to serve the notice on any one else, then it was under the necessity of showing that the person or corporation on whom it was served was, in fact, the agent of the mortgagor, expressly or impliedly authorized to receive it. It has not so shown.

■ Defendant insurer contends in the alternative that it is not liable because of the fact that other insurance existed on the property. This contention is based on a policy provision to the following effect: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the insured now has, or shall hereafter make or procure, any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

It is shown that, at the time of the fire, there were in existence two other policies each for $250, and it is contended that as a result of this the policy sued on was void. Of course, this contention would be sound if, with the knowledge and consent of Jordan, the "other" two policies were secured while the policy sued on was still in force. Such a policy stipulation has often been recognized as being effective.

In Nabors v. Commercial Union Assurance Co., 125 La. 378, 51 So. 429, 432, our Supreme Court said: "We are therefore of opinion that, when the policy here sued on was written, the insurance in the Royal Insurance Company, covering the same interest, had not been canceled, and hence that said policy by its own terms was void ab initio, and that there can be no recovery on it."

But the fact that is overlooked is that the homestead association which secured the two "other" policies was not the agent of the mortgagor for all insurance purposes nor; in fact, to procure insurance generally. Its authority, as we have said, was very limited. It could procure insurance only on the failure of the mortgagor to do so. It had no right whatever to procure this "other" insurance so long as the policy issued by defendant insurer was still effective and valid. It is shown that until after the fire Jordan did not know that the policy for $1,000 issued by defendant had been canceled and that "other" policies had been issued. He did know that the policy sued on had been issued because he had been so notified by defendant's agent. He knew that its term was three years. He knew at the time of the fire that the 3-year term had not expired, and he had received no notice of cancellation. Therefore, so far as he was con-

cerned, the issuance of the two "other" policies was without knowledge, without authority, and was ineffective. Under such circumstances, his right under the first policy was in no way affected by the issuance of the later ones.

In Cannon v. Home Insurance Company of New Orleans, 49 La.Ann. 1367, 22 So. 387, 388, our Supreme Court considered a situation very similar. There, as here, it was contended that the procurement of the second policy should be considered as annulling the first. Cannon, who had obtained the first policy, knew that the second policy had been procured, but he did not know that it had been obtained in any way for his benefit. In holding that even under those circumstances the second policy did not vitiate the first, the Supreme Court said: "This second insurance was not taken out by procurement of plaintiff, and he cannot be held to have had any interest in it."

■ Defendant further contends that Jordan must be held to have acquiesced in and to have approved of or ratified the procurement of the "other" policies because, after the loss, he executed proofs of loss to be used in making claim under those "other" policies. It cannot be denied that, after the fire, Jordan executed proofs of loss under the two later policies, and this act on his part may, at first, appear as an acquiescence by him in the action of the mortgagee in accepting the cancellation of the policy sued on and in procuring the two later policies for $250 each.

But it must be remembered first, that, at that time, the loss had already occurred and that the rights and obligations of the various parties had been fixed and established by that event; and, second, that Jordan, in executing the proofs of loss, was acting under instructions of the mortgagee and without full knowledge as to the facts or to his rights in the premises. He knew that the homestead association held a mortgage on his property, and he knew that that association had procured his insurance for him. He no doubt assumed that when the homestead association approved of the execution of the proofs of loss that it was to his interest to execute them. Later, when he gave further thought to the matter and consulted with friends and counsel, he realized that his right arose under the first policy and not under the "other" two, and thereafter he proceeded no further under the already executed proofs of loss, but abandoned all claim under the second policies and proceeded with this claim.

■ Obviously, no estoppel has resulted from his act in signing these proofs of loss, because nothing was done under them, and, in fact, it is not estoppel which is urged, but acquiescence in the act of the homestead in procuring the "other" policies.

We do not believe that even that contention is sound. He believed all the time that his first policy was valid and in force. When told otherwise by the homestead association, he accepted that information and advice as correct and proceeded to act upon it, but before completing his negotiations he discovered his error and at once withdrew from the first negotiations. We cannot hold that under those circumstances his act should be interpreted as an acquiescence by him in what the homestead association had done.

In Cannon v. Home Ins. Co., supra, Cannon had done just what Jordan did here. He had initiated an attempt to collect under the second policies, and there, as here, it was contended that this action on his part should be construed as an acquiescence in the procurement of the second or "other" insurance. The Supreme Court, in rejecting this view, said:

"The liability of defendant attached when the fire, which destroyed the sugar house, occurred. Up to that time there had been nothing done by the plaintiff that can be fairly construed into ratification of the act of Caldwell & Smith in taking out the insurance in the Crescent Insurance Company in his name. It is not shown that he knew of such insurance effected in his name. But it is urged with great ability and force of argument on part of defendant that what the plaintiff did after the fire and after liability of defendant had attached, in conferring with the officials of the Crescent Insurance Company with the view of the adjustment of the loss, constituted such ratification, which goes back to the very inception of the contract. The effect of this argument, if sustained, would be to defeat the liability of defendant company after such liability had accrued through the burning of the sugar house, by conduct of the plaintiff subsequent to the fire. We cannot sanction this contention. There was no ratification by plaintiff of the taking out by the mortgagees of this second insurance, in such way as to make the act of procuring it his act. He did nothing affecting this policy until

after the right of the parties had become fixed, and what he then did was merely preliminary to the filing of a claim, which was never filed. Even if he had filed a claim and made proof of loss, the money could not have been paid to him. By assignment indorsed on the policy, the loss was made payable to the mortgagees, and they alone could have collected the money.

"If the act of procuring that insurance did not at the time operate to avoid the contract sued on, it could not after the loss have such operation by relation."

▮ Finally, defendant maintains that in all events plaintiff's recovery, if there is to be a recovery, must be limited to the difference between the amount of the policy, to wit, $1,000, and the amount of the mortgage, which is shown to have been at the time $668.71. The contention is that it is only to the extent of his insurable interest that plaintiff should be permitted to recover, and that his insurable interest is limited to the difference between the insurance carried and the mortgage debt. Counsel for defendant cite Lighting Fixture Supply Co., Inc., v. Pacific Fire Ins. Company of New York, 176 La. 499, 146 So. 35, 38, in which our Supreme Court said: "There is nothing in the valued policy law which prohibits the insurer from contesting the extent of the insurable interest of the insured in the immovable described in the policy."

Counsel for plaintiff, on the other hand, assert that that case has no application whatever here, and that Act No. 135 of 1900, commonly known as the "Valued Policy Law," is applicable, and precludes the particular contention now under discussion.

There can be no doubt that because of the clause attached to the policy making the loss, if any, payable to the mortgagee to the extent of its interest, the homestead association could have claimed the proceeds up to the amount of its debt. It did not elect to do so, but expressly waived any rights under the policy. The proceeds were payable primarily to the mortgagor, as owner, and, therefore, any waiver of the rights of the mortgagee inured to the benefit of the mortgagor, as owner, and not to the benefit of the insurer.

The Valued Policy Law provides that the insurer shall not be permitted to question the value of the property destroyed, and, therefore, so far as it, the insurer, is concerned, that value, at the time of the loss, was at least $1,000.

In the Lighting & Fixture Case, supra, the situation was quite different. There a tenant had made certain alterations and improvements to the leased premises under an agreement that at the termination of the lease those additions and improvements should become the property of the lessor. The additions were insured and were destroyed by fire prior to the expiration of the lease. The lessor made claim for the total value of the improvements, contending that since they were a part of its property, the Valued Policy Law (which only affects immovable property) required that it be paid the full value thereof. But the court held that the improvements had not yet become the property of the lessor; that its interest therein was not coextensive with their total value because the tenant, at the time of the destruction, would still have had the right to the use thereof for the remainder of the term of the lease. The Supreme Court said: "There is nothing in the valued policy law which prohibits the insurer from contesting the extent of the insurable interest of the insured in the immovable described in the policy. The statute presumes that the insured is the owner of the property insured, and merely prescribes a rule of public policy for establishing the pecuniary loss suffered by its partial or total destruction by fire."

Here, Jordan owned the entire property. Had there been no insurance, he would have had to pay the mortgage, and he also would have suffered the entire loss of the value of the property. The fact that, out of the proceeds of his policy, he may be required to pay a debt, does not reduce his insurable interest in the property.

Our conclusion is that the Valued Policy Law prevents the insurer from contending for a lesser value than the face of the policy, and, since the mortgagee has waived all claim under the mortgage clause, the full amount payable is due to the mortgagor.

▮ In the district court the judgment was in plaintiff's favor for the face amount of the policy, to wit, $1,000, together with a penalty of 10 per cent., or $120, and an attorney's fee of $200, and, also, an engineer's fee of $50. The amount of the items on which the judgment is based is not seriously questioned, except that it is contended that there should have been no allowance for interest.

It is conceded by plaintiff that he did not pray for interest, and that, therefore, the judgment awarding him interest was incor-

rect to that extent. He contends, however, that this inconsequential error should not be permitted to throw upon him the expense of the costs of appeal. We agree with him. The error was made in the original judgment.

There was no application for a new trial, and no effort to correct it in the court below. Under these circumstances it would work undue hardship to require plaintiff to pay the costs of appeal.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, amended by the elimination of the interest, and, as thus amended, it be affirmed at the cost of appellant.

Amended and affirmed.