## POLLY CARPENTER v. THE CONTINENTAL INSURANCE COMPANY.

*Fire Insurance—Evidence—Of statements of alleged agent, properly rejected under facts stated in head-note 1—Application for insurance—Stating that insured property is mortgaged—And right of mortgagee to secure insurance in his favor for stated sum—Sufficient notice to enable insurance company to protect itself—And full compliance by mortgagor with the spirit of clause avoiding policy in case of double insurance—If mortgagee secures insurance in his favor in names of mortgagors—Who are joint owners of property—One of whom is ignorant of such fact—And insures her interest the following day, giving notice in her application of mortgagee's rights as above stated—Held, not other insurance within forfeiture clause of her policy—Such forfeiture clause may be waived by insurer—If policy avoided by reason of existing insurance not assented to by insurance company—New contract, based on valid consideration, is required to revive it—Or such conduct as misleads the assured to his prejudice—And operates as an estoppel on company—In such a case the risk never attached—And the premium paid, in absence of fraud, belongs to policy-holder—Which the company has no right to retain—If, after a loss occurs, company receives notice of existing insurance, which warrants repudiation of liability—And takes steps looking towards adjustment of loss—Inconsistent with non-recognition of such liability—And puts assured to inconvenience and expense in furnishing information as basis for such proposed adjustment—Jury authorized to find waiver of forfeiture by company.*

1. August 5, 1880, plaintiff and her grandson mortgaged certain lands,

owned by them *jointly*, to secure a debt of the grandson. The mortgage contained the *usual* insurance clause, and on September 9, 1880, the dwelling-house on said land was insured for $2,000, in favor of the mortgagee, in the Watertown Insurance Company, but without the knowledge of plaintiff, who on the *next* day insured *her* interest in the building with defendant for $3,000. In her application she referred to the mortgage, and stated that the mortgagee had the *right* to effect insurance in the sum of $2,000 in his favor on the property on which she sought insurance. On May 23, 1881, the dwelling-house was destroyed by fire. Defendant was duly notified of the loss, and took steps looking to its adjustment inconsistent with the repudiation of its liability as insurer on account of the *prior* insurance; but afterwards refused to pay said loss, on the ground that the policy in favor of the mortgagee was *"double"* insurance, avoiding that of plaintiff under a clause providing that the *existence* or *after* placing of any *other* contract of insurance, without defendant's consent indorsed on the policy, should render the same void.

In a suit to recover such loss defendant sought to prove by the agent who issued the *first* policy conversations with the mortgagee's attorney and an alleged agent of plaintiff, showing her consent to the prior insurance. No claim was made that *either* knew that such prior policy had been issued until after the fire, nor was the evidence sufficient to establish the agency claimed.

*Held*, that the evidence was properly rejected, it being very remote, and, if admissible, established nothing more than the mortgage provided for.

2. Where a policy of insurance provided that the *existence* or *after* acquiring of any *other* contract of insurance, without the consent of the company issuing such policy, should render it void, and it appears that the written application for such policy contained a notice that the insured property was mortgaged, and of the *right* of the mortgagee to secure insurance in his favor for $2,000, which had been placed *prior* to such application, but of which fact the applicant was ignorant,—

*Held*, that the application gave all the explanation necessary to protect the rights of the *second* insurer, and of the mortgagor in case the mortgagee should procure the insurance provided for in his mortgage; and that such statement was a *full* compliance by the mortgagor with the *spirit* of such non-insurance clause.

3. A mortgagee obtained insurance in favor of his mortgage interest, without the knowledge of one of the mortgagors, who was a *joint* owner of the property, and who on the next day insured *her* interest in the dwelling-house on the *joint* land in another company, being still ignorant of the *prior* insurance. The building was destroyed by fire, and in a suit by her to recover her insurance the company defended under a clause avoiding the policy in case of *existing* or *after*-acquired insurance unless its consent was indorsed on such policy.

*Held,* that the assured did not make any *other* contract of insurance, and that the defense was not maintainable.

4. A clause of forfeiture in an insurance policy, on account of existing or after-acquired insurance in another company unless consent thereto is indorsed on such policy, may be *waived* by the insurer.

5. If an insurance policy becomes void by reason of *existing* insurance without the consent of the *later* insurer, nothing short of a *new* contract based on a valid consideration, or such conduct as, by misleading the assured to his prejudice, would operate as an estoppel, can revive the policy. (*New York Cent. Ins. Co. v. Watson,* 23 Mich. 486.) In such a case the risk never attached, and the premium paid, in the absence of fraud, belongs to the person paying the same, and the insurance company would have no right to retain it.

6. Where an insurance company was informed, immediately after a fire, of *prior* insurance, which *might* authorize it to repudiate its liability under its policy, but after receiving such information took steps towards the adjustment of the loss only consistent with a recognition of its continued liability therefor, and put the assured to inconvenience and expense in furnishing information as the basis for such proposed adjustment,—

· . *Held,* that if the policy had been forfeited by reason of such *existing* insurance, the jury were justified in finding that the forfeiture had been waived.

Error to Oakland. (Stickney, J.) Argued May 6, 1886. Decided June 17, 1886.

Assumpsit. Defendant brings error. Affirmed. The facts are stated in the opinion and head-notes.

*F. A. Baker (John Atkinson,* of counsel), for appellant :

Under the conceded facts in this case, the Watertown policy was double or other insurance within the meaning of the policy in suit.

Plaintiff and Arthur C. Emmons were co-mortgagors, and *jointly* agreed with the mortgagee to insure the property for *his* benefit ; and this joint promise was sufficient authority to Emmons from plaintiff to authorize him to procure the Watertown policy, which rendered defendant's policy void,—being procured without its consent,—regardless of any question of good or bad faith, because such was the condition of the contract of insurance upon which suit is brought.

The authority given in the mortgage authorized the mortgagee to procure insurance for the benefit of both parties,

and this is its fair interpretation: *Waring v. Loder,* 53 N. Y. 585.

Insurance for the benefit of a mortgagee is double or other insurance: *Van Buren v. Ins. Co.,* 28 Mich. 398–405.

The evidence that the State agent of defendant investigated the loss, and informed Mr. Emmons that the plaintiff need not make any proofs of loss, would show a waiver of such proofs, but not of other defenses. If he had called for such proofs it might be a waiver, especially if the subsequent dealing indicated such intention: *Penn. Fire Ins. Co. v. Kittle,* 39 Mich. 51.

*Baldwin & Draper* (brief by *W. N. Draper*), for plaintiff:

Forfeiture of a policy for *other* insurance is waived, when the adjusting agent, with knowledge of the forfeiture, puts the assured to the expense of making proofs of loss, and requires him from time to time to correct them, without giving him to understand that the company will rely upon such forfeiture: *Penn. Fire Ins. Co. v. Kittle,* 39 Mich. 54.

If, in any negotiations with the assured after knowledge of the forfeiture, the company recognizes the validity of the policy, or does acts based thereon, or induces the assured, by virtue thereof, to do some act or incur some trouble or expense, the forfeiture is, as a matter of law, waived: *Prentice v. Knickerbocker Life Ins. Co.,* 77 N. Y. 483; *Titus v. Glens Falls Ins. Co.,* 81 Id. 419; *Webster v. Phœnix Ins. Co.,* 36 Wis. 67; *Gans v. St. Paul F. & M. Ins. Co.,* 43 Id. 109.

CHAMPLIN, J. The plaintiff was the owner of the undivided half of the premises insured. At the time the insurance which forms the subject of this controversy was effected, Arthur C. Emmons, a grandson of plaintiff, was the owner of the other undivided half. The risk was written in defendant company, September 10, 1880, upon a written application of plaintiff, reference to which will be made further on. In August, 1880, Polly Carpenter and Arthur C. Emmons united in a mortgage to one William R. Jones, of Waterford, Oakland county, Michigan, which bears date the fifth, and was acknowledged by Arthur on the ninth, and by plaintiff on the eleventh, of August, and covers the

property insured by defendant. This mortgage contains the following clause :

"And it is also agreed, by and between the parties to these presents, that the said parties of the first part (so long as the moneys secured by these presents are unpaid) shall and will keep the mortgage interest of the party of the second part, or his assigns, in the buildings erected and to be erected upon the lands above conveyed, insured against loss and damage by fire to the amount of two thousand dollars; and, in default thereof, it shall be lawful for the said party of the second part, his executors, administrators, or assigns, to effect such insurance, and the premium and premiums paid for effecting the same shall be a lien on the said mortgaged premises, added to the amount secured by these presents, and payable forthwith, with interest at the rate of seven per cent. per annum."

It was claimed on the part of the plaintiff, and testimony was introduced which had a tendency to prove, that the debt which the mortgage was given to secure was the individual debt of Arthur, and that plaintiff merely joined in the mortgage as surety for him. On the ninth day of September, 1880, a policy was issued by the Watertown Insurance Company, in and by which this company insured Arthur C. Emmons and Polly Carpenter upon the dwelling-house situated on the mortgaged premises in the sum of $2,000. It was a disputed question upon the trial whether Polly Carpenter knew or had any notice of the insurance in the Watertown Company until after the fire which consumed the dwelling insured in defendant's policy. The plaintiff gave testimony tending to prove that the insurance in the Watertown Company was obtained, without her knowledge, by the mortgagee for his own benefit. There was a clause in the policy stating that the " loss, if any, was payable to Wm. R. Jones as his mortgage interest may appear." On the other hand, the defendant's testimony tended to show that the plaintiff's agent had knowledge of the insurance at the time it was made. The jury have found specifically, in answer to a question, that the plaintiff did not know of the issuing of the Watertown policy until after the fire. But the de-

fendant claims that the court committed an error in excluding certain testimony offered by it tending to show that the plaintiff had such knowledge. Defendant produced John H. Dresser, who testified that he was the agent who issued the policy in the Watertown Company; that Samuel W. Smith, of Pontiac, told him that Mr. Jones had a mortgage on the property, and was to have insurance; that they wanted a policy to secure Jones' interest.[1] Thereupon he examined the property, and while there had a conversation with Elias R. Emmons, and told him that he represented the Watertown Company, and Emmons said that the Watertown Company was one he knew nothing about; that he (Dresser) might look at the house, and if he concluded to take a policy he would notify Mr. Smith, and Smith could let the witness know. The court, on motion, struck out that part of the above testimony relative to what was to be told to Mr. Smith. The witness further testified that he saw Mr. Smith a few days afterwards, but did not then write the policy. Witness was then asked:

" What did Smith tell you as to what he had heard from Mr. Emmons?"

This was objected to and excluded. The witness then testified that he did not issue the policy right then when he saw Smith, nor for a week or ten days afterwards. The witness was further asked this question, which was rejected on the objection made by defendant that it was leading and incompetent, viz.:

" When the policy was finally issued, was it taken out in accordance with instructions from Mr. Jones as mortgagee, or whether Smith purported to act in the matter under the instructions or advice of Mr. Emmons or Mrs. Carpenter?"

This question was also asked:

" I will ask what Mr. Smith informed you when you saw him after going to Orion and seeing Mr. Emmons?"

—To which the same objection and ruling were made.

---

[1] Samuel W. Smith was an attorney who did business for William R. Jones, and represented him in securing the insurance in favor of his mortgage interest.

The foregoing rulings are the errors complained of. The defendant had introduced testimony from which it claimed that it had established the fact that Elias R. Emmons was the general agent of plaintiff, and its contention is that the knowledge of the agent is knowledge of the principal, and consequently the plaintiff is chargeable with any knowledge which Elias R. Emmons had of the insurance in the Watertown Company. But no claim is made that either the plaintiff or Elias R. Emmons was ever informed, previous to the fire, that a policy had been issued in the Watertown Company. What was attempted to be shown was that the plaintiff assented that the mortgage interest of Jones might be insured in the Watertown, and this was no more than the express terms of the mortgage provided might be done. The evidence was very remote, if admissible at all. Mr. Smith had already been sworn, and seems to have had no very definite recollection about having had any conversation with Mr. Emmons upon the subject of insuring the mortgage interest in the Watertown. The fair inference from his testimony is that he had no such conversation. As the case stood, the agency of Elias R. Emmons had not been made out. He was not a party to the mortgage, and had no interest in the property insured. Mrs. Carpenter, being a mere surety in the mortgage, was not interested in having it insured for the benefit of the mortgagee. Under the circumstances, the proposed testimony was rightly excluded.

There is a clause in the defendant's policy which reads as follows:

"If the assured shall have, or shall hereafter make, any other contract of insurance, whether valid or not, on the property hereby insured, or any part thereof, without the consent of this company written hereon, * * this policy shall become void."

The defendant claims that the insurance in the Watertown Insurance Company constituted double insurance, and rendered the policy void. This claim is met by the plaintiff (1) by evidence which, if believed by the jury, would create an estoppel; and (2) by evidence which, if believed, would

amount to a waiver of any forfeiture by reason of the prior insurance.

1. There was a written application for the insurance, which was signed by the plaintiff, and delivered to defendant's agent, Mr. Warner. This application the agent claims to have lost. The plaintiff introduced oral testimony of its contents, to the effect that it contained the statement that Mr. Jones held a mortgage upon the property, and that he had the right to get the property insured for $2,000; that the application was filled out by the agent of the company from information given him by Elias R. Emmons, and was signed by the plaintiff. The policy in question was based upon that application; and, if the company neglected to make the proper entry upon the policy, permitting this insurance under the Jones mortgage pursuant to the information contained in the application, it is estopped from now insisting that the insurance obtained in obedience to the mortgage clause by the mortgagee avoids the policy. The application gave the defendant all the information that was necessary to protect its rights, and also to preserve the rights of the mortgagor in case the mortgagee should procure the insurance. To hold otherwise would place the mortgagor in a perilous and uncertain position. The mortgagee could, by obtaining insurance of which the mortgagor had no knowledge, render void all insurance which the mortgagor might have obtained upon the property. We think the mortgagor has complied with the spirit of this clause of the policy when she states in her application the mortgage, and the amount of insurance for the mortgagee's benefit authorized thereby. No fraud or evil consequences can be practiced upon or arise to the insurance company where such statement is made. It can write its policy and frame its risk with reference to such information.

It was a disputed question upon the trial whether the mortgagor, the plaintiff in this suit, knew or assented to the insurance obtained in the Watertown Company for the benefit of the mortgagee. The evidence tended strongly to prove that this insurance was obtained by the mortgagee without any

notice or demand having been made upon the mortgagors to do so.   It has been held that a policy made by a mortgagor, to cover the interests of the mortgagee, without his knowledge or consent, is not other insurance : *Johnson v. North British & Mercantile Ins. Co.*, 1 Holmes, 117.   And in *Titus v. Glens Falls Ins. Co.*, 81 N. Y. 415, 416, Mr. Justice Earl, in speaking of a case which is parallel with the one under consideration, says :

" It is true that Merrill's mortgage contained a clause providing that he should keep the mortgaged buildings insured, and assign the policy to the plaintiff, and that, in case of default on his part, the plaintiff might procure such insurance at his expense, and add the amount paid therefor to the mortgage.   But that clause could not operate until there was default on the part of Merrill, and he could be put in default only upon refusal or neglect to procure the insurance after some sort of notice or demand.   Besides, the plaintiff, in procuring that insurance, acted for himself and in his own interest, and hence his act in procuring it cannot be so far regarded as the act of Merrill as to violate the clause of the policy now under consideration.   It was not other insurance, within the meaning of the policy, procured by Merrill."

See, also, *Fox v. Phenix Fire Ins. Co.*, 52 Me. 333; *Tyler v. Ætna Fire Ins. Co.*, 12 Wend. 507; *Ætna Fire Ins. Co. v. Tyler*, 16 Id. 386 ; *Carpenter v. The Providence Wash. Ins. Co.*, 16 Pet. 495 ; *Nichols v. Fayette Mut. Fire Ins. Co.*, 1 Allen, 63 ; *Burbank v. Rockingham Mut. Fire Ins. Co.*, 24 N. H. 550 ; *Norwich Fire Ins. Co. v. Boomer*, 52 Ill. 442; *Williams v. Cresent, etc., Ins. Co.*, 15 La. An. 651 ; *Burton v. Gore Dist. Mut. Fire Ins. Co.*, 12 Grant (U. C.) 156.

In this case the jury have found that the plaintiff did not know, until after the fire, of the issuing of the Watertown policy.   This is conclusive, and settles the controversy over this clause of the policy.   The assured did not make any other contract of insurance, and consequently there is no ground for claiming that the policy is invalid for that reason.

2. Should it be held that the insurance in the Watertown Company was double insurance, the evidence was sufficient

to authorize the jury to find a waiver of the prior insurance in the Watertown Company as a cause of forfeiture under this clause of the policy.   That such cause of forfeiture may be waived by the insurer, and the policy be deemed in force, is now too well settled to be drawn in question : *Pennsylvania Fire Ins. Co. v. Kittle,* 39 Mich. 51 ; *Lyon v. Travelers' Ins. Co.,* 55 Id. 141 ; *Westchester Fire Ins. Co. v. Earle,* 33 Id. 143 ; *Titus v. Glens Falls Ins. Co.,* 81 N. Y. 419 ; *Insurance Co. v. Norton,* 96 U. S. 234 ; *Gans v. St. Paul Fire & M. Ins. Co.,* 43 Wis. 109 ; *Allen v. Vermont Mut. Fire Ins. Co.,* 12 Vt. 366.   It is also true that, where a policy becomes absolutely void at once upon insurance having been obtained without consent, nothing short of a new contract on valid consideration, or such conduct as, by misleading the assured to his prejudice, would operate as an estoppel, can revive the policy : *New York Cent. Ins. Co. v. Watson,* 23 Mich. 486.   In such case, that is, of prior insurance, the risk never attached; and the premium paid, in the absence of fraud, belongs to the person paying the same, and the insurance company would have no right to retain it.   But if, with a knowledge of the fact, the insurer does any act which recognizes the existence and validity of the contract, the premium paid, and retained by the insurer, will be a sufficient consideration to support the waiver and revive the contract. So, likewise, will the putting of the assured to inconvenience, cost, or expense under circumstances which recognize the continued liability of the company.

In this case the defendant was informed of the insurance in the Watertown Company immediately after the fire, and then might have repudiated any liability upon the contract, or remained silent and inactive.   But, instead of this, the defendant, by its agent, after receiving such information, took steps looking towards the adjustment of the loss, and only consistent with a recognition of the continued liability of the defendant. It asked and obtained information respecting the value of the building destroyed by fire, the indebtedness of Mr. Emmons to one Funston, and whether he had, at any time within a year then past, threatened to injure

Mr. Emmons by fire or otherwise.   Mr. Emmons was acting for the plaintiff in supplying information as to the fire and loss, and adjusting it with the insurance company. In obedience to the request for information by the agent of the company, he made inquiries with reference to Funston, and made three trips into Detroit to see and communicate with the agent with reference to the matter inquired about.   Upon the whole evidence, I think, if there had been a forfeiture of the policy upon the ground stated by the company, the jury were justified in finding that it had been waived.[1]

In any view we can take of the issues presented to us, the judgment of the circuit court ought to be affirmed.

The other Justices concurred.

---

[1] For a valuable case settling the rights of Insurance Companies and their policy-holders, and defining the power of policy-writing agents in certain cases, see *Richards v. Washington F. & M. Ins. Co.*, 60 Mich. 420.