JAMES W. CLEAVER v. THE TRADERS' INSURANCE COMPANY.

[See 65 Mich. 527.]

*Fire insurance—Forfeiture of policy—Additional insurance—Waiver —Authority of agent.*

1. The former opinion in this case, reported in 65 Mich. 527, is held controlling, as far as the defense of a forfeiture of plaintiff's policy by taking additional insurance contrary to its conditions is concerned; but it is further held that the question of the waiver by the defendant of such forfeiture should have been submitted to the jury.

2. It is the duty of the insured to *know* what his contract of insurance is, and he must be held to a knowledge of the conditions of his policy, as he would be in the case of any other contract or agreement; and the fact of his not having *seen* the policy will not excuse a want of such knowledge any more than his failure to *read* it, in the absence of proof of any adequate reason for *not* seeing it.

3. The fact that an insurance agent had authority, in a certain way and manner, to consent to the taking of additional insurance, and had done so in other cases, will not save a forfeiture incurred by taking such insurance with the consent of the agent in a manner outside of such authority, his right to waive such conditions of the policy not being shown.

4. An insurance company will be held to have waived the forfeiture of a policy incurred by taking additional insurance contrary to its conditions, where with full knowledge of the facts showing such forfeiture, which was supposed to have been waived, it fails to notify the insured of an intention to insist on such defense until after its adjuster has examined into the loss, and received from the insured all the information he asked for in relation to its extent and value, taking two days of his time and the services of a man furnished by the insured, and making no point of the taking of such additional insurance as a reason why the insurance should not be paid.

Error to Tuscola. (Beach, J.) Argued June 15, 1888. Decided October 5, 1888.

*Assumpsit* on insurance policy. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*T. W. Atwood,* for appellant.

*Norris & Norris,* for defendant.

MORSE, J. This case has been once before in this Court, and will be found reported in 65 Mich. 527 (32 N. W. Rep. 660). Upon a trial since then, in the circuit, the defendant had judgment; the court instructing the jury to find a verdict in its favor. It is claimed by the counsel for the defendant that the case as presented upon this last trial does not differ materially from the case

made at the first trial, and that the ruling of the circuit
judge was in accord with the decision of this Court, as
above reported.    But the counsel for the plaintiff con-
tends that the evidence taken on the last trial, and con-
tained in the record now before us, differs from that
taken before in this :

1. There is testimony now, not presented before, that
the plaintiff never had his policy in his possession, and
therefore knew nothing of the clause which governed the
ruling of this Court in its former opinion.

2. That it is now shown that the agent, Quinn, did
have authority to consent to the taking of other insur-
ance.

3. That there is testimony in the present record tend-
ing to show that, after the fire, with full knowledge of
all the facts, the defendant, by its acts, waived the for-
feiture of the policy, if any such forfeiture had taken
place.

It appears from the record that the plaintiff testified
on the last trial that Quinn asked him where his policy
was, and the plaintiff replied that he had never had it.
Quinn says:    "I know now you never had it."    Quinn
then said that the consent for the additional insurance
ought to be indorsed upon the policy, but that he could
enter it upon his books,—make a memorandum of it,—and
it would be just as well.    He went and got his book, but
plaintiff did not see him write anything in it.    Quinn
denies that any such thing took place.    The plaintiff's
excuse for not testifying to this fact upon the first trial
is that he was not asked about it.    Quinn also testified
on the last trial that, as agent of the company, he had
power to consent to other insurance, and had done so
repeatedly.    This fact does not appear in the record
before us of the first trial.    The extent of his authority
to consent, however, was by indorsing the same upon the
policy, and reporting such indorsement immediately to the
company.    The plaintiff testifies also that he never saw

the policy in suit before the fire, but that this policy was a renewal of one which he had upon the same property before, which policy he thinks he read, and probably got the idea from reading it that he must get the consent of the company before taking additional insurance.

We do not think that these additional facts, as testified to by the plaintiff and Mr. Quinn, materially change the *status* of the case. As we said when the case was here before, it was the duty of the plaintiff to know what his contract of insurance was, and the insured must be held to a knowledge of the conditions of his policy, as he would be in the case of any other contract or agreement. The fact that plaintiff had never seen his policy does not help him any more than the fact that he had not read it, which appeared upon the first trial. There is no adequate reason shown why he could not have seen the policy had he desired to do so, and the same was not kept from him through any fault or fraud of the defendant or its agent. It was delivered to Mr. Whitney, with his knowledge and consent, who assigned it back to him before the commencement of this suit.

The fact that Quinn had authority, in a certain way and manner, to consent to the taking of additional insurance, and had done so in other cases, does not aid plaintiff. He did not consent in this case, within the line of his authority, or in the manner prescribed by the policy; and it is not shown that he was authorized to waive any of its provisions. The case, therefore, in this respect, stands as it did before, controlled by the clauses in the policy providing that the policy should be void if the insured procured further insurance without the indorsement of the consent of the company upon the policy, and that the agent has no authority to waive or modify this condition.

71 MICH.—27.

But we think that the question of waiver should have been submitted to the jury. It appears that on the day of the fire Quinn informed the company by telegraph of the loss. The secretary of the company, at Chicago, upon the same day wrote to Quinn in reference to the fire. Quinn replied by letter of date December 30, 1884, three days after the fire, in which he stated to the company that there was this additional insurance upon the property in the Millers' Mutual Insurance Company of Lansing, and, as there was no indorsement of permission in his record of contents of policy, he would make an explanation of his knowledge of such additional insurance. He then proceeds to state in his letter, substantially as he testified on both trials, that Cleaver, who was a client of his, came into his office, and said that the agent of the Millers' Mutual Insurance Company had examined his mill, and had urged him to take insurance; that he had made up his mind to take $2,000 in that company. Quinn looked over the application, and "filled up" some of the answers. He understood that the Millers' Mutual Insurance Company had agreed to accept this application, and carry the insurance, and knew that Cleaver had received his policy afterwards. He further stated in this letter that nothing was said by Cleaver about getting consent for other insurance, and, his attention not being called to it, he (Quinn) did not think about there being no permission for the other insurance.

"If he had asked for it, I would of course have consented, as the property would stand more insurance, and Cleaver is a first-class man."

The letter concludes as follows :

"The property is totally destroyed, and the loss is complete. The origin of the fire is unknown. Cleaver lives on farm in country, and was not here. His partner, Wilder, lives in the village, and when awakened by

watchman, the mill, which is some distance from the village, was all on fire. The alarm was given at three o'clock in the morning, at which time it was a mass of flames. It had unquestionably been on fire some time previous, as I was told by a farmer who lives near town he observed the light at half past one. Wilder, partner in running mill, was in there until 10 o'clock at night, and says, when he left, everything was secure. The firm was doing a good business, and had heavy stock on hand, and the fire, no doubt, is a great loss both to Cleaver and the firm.

" Our village is getting badly scorched by fires. We had another heavy fire—Wilcox & Weal's planing mill— last night. Fortunately the policy I had on the mill expired last spring, and they would not renew with me.

" Yours truly,
" T. C. QUINN.

" P. S. Cleaver never has had possession of your policies for either year, nor in fact has he ever seen them. I delivered them to agt. of Whitney, the mortgagee, who forwarded the policy to him.              T. C. Q."

The secretary replied as follows:

" Loss.                   CHICAGO, Jan. 5, 1885.
" T. C. QUINN, ESQ., Agt.,
              " Caro, Mich.
" Dear Sir: Yours of the 30th ult., giving us further information in regard to loss under policy 55,313, Jas. W. Cleaver, is received. We presume that the conversation that you had with Mr. C. in regard to the other insurance will be a waiver of any rights we might have under our policy on this subject of additional insurance without notice. Our adjuster will be able to give this loss attention sometime next week, and will make a thorough investigation of the origin of the fire, value of the property, etc. If it is totally burned up, as you say, there is no special hurry.

" Yours truly,
" R. J. SMITH, Sec'y."

It will be seen by this last letter that the company, after reading Quinn's statement of the facts of his connection with the taking of the additional insurance, supposed that it had waived any forfeiture of the insurance contract

because of the non-indorsement of consent to the same upon the policy.

In February, 1885, its adjuster, one Berne, appeared at Caro. Before that time, Mr. Cleaver or his attorney was notified to measure the shafting, gearing, etc., about the mill, so that an accurate account could be taken. Berne sent for Cleaver, who lived five miles out in the country, and was with him nearly two days. Cleaver testifies that he said he was an adjuster of the company, and had come to adjust his loss. He wanted Cleaver to furnish length of belts, shafting, and size of pulleys. Plaintiff told him he could not do it, but would find Mr. Adams, who could. He got Mr. Adams, who made a statement of length of shafting, size of pulleys, length of belts, length of the elevator, size of the bolts, size of the bolts to the stones, and the size and number of the stones, and went through the mill generally. Berne made objections finally to paying the whole loss, because the application stated that the mill had not settled, and he had ascertained that it had settled, and offered plaintiff $2,000 in settlement of the loss, which plaintiff refused. Cleaver swears that Berne did not say anything about the taking of the additional insurance, or assign any other reason than that of the mill settling why he would not pay the full amount of the insurance.

Berne admits that he required the statement, and that plaintiff procured Adams, who went with him to the ruins, and there estimated the value of the property. He says: "Plaintiff furnished me with everything I asked him for." Admits offering him the $2,000, but swears that he brought the matter of additional insurance to Cleaver's attention, and told him that the company was under no legal obligation to pay him any of the insurance on that account; that his policy was violated, but that he offered him this amount because he thought the fire

was a fair one, and that $2,000 was the fair value of his loss, added to what he would receive from the other company.

It will be seen that the defendant company was notified about the 1st of January of this fact, now relied upon to void this policy, but supposed that it had probably waived it. It did not notify the plaintiff that it intended to take advantage of this additional insurance, at least until after its adjuster had been sent to Caro, and had asked of Mr. Cleaver, and received from him all the information asked for in relation to the extent and value of his loss; taking two days of his time, and the services of another man besides. This information, time, and labor asked by the company, and furnished by the plaintiff, was wholly unnecessary under the defense made in this suit.

The undisputed action of the company, and the course pursued by its adjuster, if the testimony of the plaintiff was believed, that Berne made no point of the taking of the additional insurance as a reason why the insurance should not be paid, were sufficient under the previous rulings of this Court to warrant the jury in finding a waiver by the company of the defense made upon the trial, and to authorize a judgment in favor of the plaintiff for the amount of his insurance. And I am inclined to the opinion that such a waiver in law was made out, even if the testimony of the adjuster be taken as true, instead of that of the plaintiff. *Carpenter v. Ins. Co.*, 61 Mich. 635, 645 (28 N. W. Rep. 749); *Marthinson v. Ins. Co.*, 64 Id. 372 (31 N. W. Rep. 291); *Cobbs v. Association*, 68 Id. 463, 465; (36 N. W. Rep. 222, 788).

The judgment must be reversed, and a new trial granted, with costs of this Court to plaintiff.

SHERWOOD, C. J., and CHAMPLIN, J., concurred. CAMPBELL and LONG, JJ., did not sit.