F. E. Clower, Respondent, v. Fidelity-Phenix Fire Insurance Company of New York, a Corporation, Appellant.*

St. Louis Court of Appeals.  Opinion filed June 7, 1927.

1.—Insurance—Fire and Theft—Automobiles—Additional Insurance—Avoiding Policy. Additional fire and theft insurance on an automobile in violation of the terms of the first contract will avoid the policy, since overinsurance by concurrent policies on the same property tends to cause carelessness on the part of the insured and opens the door to fraud.

2.—Appellate Practice—Demurrer at the Close of All the Evidence—Inferences—Rule of Review. On appeal, in determining the correctness of the court's ruling on a demurrer offered at the close of all the evidence, plaintiff must be given the benefit of all evidence that was adduced in his behalf as well as of all evidence favorable to him offered by defendant, in addition to which he must be allowed the benefit of reasonable inferences of fact on all the proof, and plaintiff's evidence must be regarded as true, if not impossible or entirely beyond reason, and defendant's evidence must be taken as false, where it is contradicted by that of plaintiff, and the court may not draw inferences of fact in defendant's favor to countervail or overthrow inferences tending to support plaintiff's cause of action.

3.—Insurance—Fire and Theft—Automobiles—Additional Insurance—Mortgagor—Mortgagee—Separate Policies. To constitute additional insurance of the sort prohibited by a policy of fire and theft insurance covering an automobile, both policies must be upon the same subject-matter and upon the same interest therein, as both the mortgagor and the mortgagee have separate and distinct insurable interests in property covered by a mortgage, and, so long as the policy held by each covers only such respective interest, the provision in the policy against other insurance is not violated.

4.—Same—Same—Same—Same—Chattel Mortgages—Provisions—Default of Mortgagor—Notice. As affects additional insurance, a provision in a chattel mortgage on an automobile by the terms of which it was provided that the mortgagor should keep the automobile insured against loss or damage by fire or theft, the loss to be payable to said mortgagee, as the mortgagee's interest might appear, and that in case the mortgagor should neglect or refuse to obtain such insurance, the mortgagee might, at its option, obtain the same, and all sums of money thus expended to be repayable upon demand from said mortgagor to said mortgagee, held not to authorize the mortgagee to secure such insurance upon the owner's interest until such time as the owner is actually shown to have been in default after notice or demand.

5.—Same—Same—Same—Same—Same—Mortgagee Obtaining Insurance—Agency. Fire and theft insurance on an automobile obtained by the mortgagee without notice to the mortgagor held to be on mortgagee's interest and account, and that its act in having procured such policy cannot be so far regarded as the act of plaintiff as to have constituted a violation of the provision against other insurance in the policy issued by defendant on the theory that the mortgagee was the mortgagor's agent.

6.—Same—Same—Same—Same—Automobile Insured by Mortgagee Without Authority—Ratification. A contract of insurance made on behalf of an insured, though without authority, may be ratified by such insured, even after a loss has occurred, provided the insurer has not meanwhile withdrawn its previous assent.

7.—Same—Same—Same—Same—Same—Mortgagor's Ratification After Loss—Not Violation of Mortgagor's Policy. A contract of insurance covering an automobile, made by the mortgagee without notice to the mortgagor, which did not violate a provision in mortgagor's policy prohibiting additional insurance, could not be ratified by mortgagor after loss so as to make it a violation of such provision.

8.—Same—Same—Same—Same—Evidence—Whether Insured Violated Provision Prohibiting Additional Insurance Jury Question. In an action on a fire and theft insurance policy covering an automobile, whether insured violated a provision in the policy prohibiting additional insurance in that the mortgagee had taken out a policy covering its interest, in addition to that taken out by the mortgagor, **held** a question for the jury.

9.—Instructions—Insurance Contracts—Undisputed Facts. An instruction is subject to criticism, and in certain instances may be prejudicially erroneous, when it leaves it for the jury to say whether the undisputed facts in evidence, or the facts found by the jury from the evidence, constitute a contract, since the essentials of a contract should be determined by the court.

10.—Same—Same—Instruction Favorable to Insurer—Not Ground for complaint. In an action on a policy of fire and theft insurance issued by defendant, insuring plaintiff's automobile against loss by fire and theft, in which insurer alleged that additional insurance was taken out contrary to the terms of the policy, an instruction requiring the jury to find that, when the policy sued on was issued, there was no prior existing contract of insurance on said car for plaintiff's benefit, **held** not ground for complaint by defendant, inasmuch as the existence of a prior contract of insurance was a matter of defense which it was incumbent upon defendant to prove, and, consequently, the unqualified characterization by plaintiff of the policy taken out by the mortgagee as a contract of insurance, insofar as it affected him, was a concession upon his part, and rendered the instruction favorable to defendant.

11.—Appellate Practice—Assignments of Error in Refusal to Give Instructions—Not Preserved in Brief and Argument—Waived. Assignments of error in refusal to give instructions are regarded as waived, where not preserved by counsel in their brief and argument.

12.—Insurance—Fire and Theft—Vexatious Refusal to Pay—Must be Wilful and Without Reasonable Cause. The penalty for vexatious refusal to pay should not be inflicted upon an insurer unless the evidence and circumstances disclose that such refusal was willful and without reasonable cause, as the facts would have appeared to a reasonably prudent person before the trial.

13.—Same—Same—Same—Evidence Conflicting as to Liability—Reasonable Cause—Refusal to Pay Not Vexatious. Where the evidence was conflicting as to plaintiff's knowledge of the existence of prohibited additional insurance on an automobile, and it may not be denied that there is authority to support defendant's contention that such policy constituted such other insurance as to have avoided the policy, **held**, under all the circumstances in the case, defendant had reasonable cause to refuse to pay the loss, and the right to litigate the questions involved, without being penalized for so doing.

---

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, p. 1410, n. 42; 4CJ, p. 765, n. 93; p. 918, n. 42; p. 1025, n. 71; p. 1026, n. 85; p. 1068, n. 22; p. 1069, n. 23; Contracts, 13CJ, p. 781, n. 45, 46; Fire Insurance, 26CJ, p. 69, n. 88; p. 70, n. 91; Insurance, 32CJ, p. 1135, n. 12, 13, 15; 33CJ, p. 130, n. 41; p. 151, n. 12, 13; Motor Vehicles, 28Cyc, p. 50, n. 59 New; Trial, 38Cyc, p. 1511, n. 23; p. 1522, n. 1; p. 1523, n. 4; p. 1530, n. 9; p. 1531, n. 19.

Appeal from the Circuit Court of Audrain County.—Hon. N. M. Pettingill, Judge.

REVERSED AND REMANDED (*with directions*).

*Leahy, Saunders & Walther, A. C. Whitson* and *Lyon Anderson* for appellant.

(1)  (a)  By the acceptance of the policy with the condition against other insurance, plaintiff warranted that there was no other insurance on the car.  Harwood v. Insurance Co., 170 Mo. App. 30; Hubbard v. North British & Merc. Ins. Co., 57 Mo. App. 1; Mers v. Franklin Ins. Co., 68 Mo. 127.  (b)  A warranty must be literally complied with.  Harwood v. Ins. Co., 170 Mo. App. 30; Hubbard v. North British & Merc. Ins. Co., 57 Mo. App. 1; Mers v. Franklin Ins. Co., 68 Mo. 127; Pawson v. Watson, Cowp. 785; Blackhurst v. Cockrell, 3 Term. R. 360.  (c)  The fact that Clower knew nothing of the existence of the other insurance makes no difference, since he warranted there was no other insurance.  A warranty must be strictly complied with.  Kempf v. Farmers Mut. Ins. Co., 41 Mo. App. 27; Holloway v. Dwelling House Ins. Co., 48 Mo. App. 1; Maddox v. Ins. Co., 56 Mo. App. 343; Mers v. Franklin Ins. Co., 68 Mo. 127; Hubbard v. North British & Merc. Ins. Co., 57 Mo. App. 1; Mers v. Ins. Co., 188 Mo. App. 297; Imperial Fire Ins. Co. v. Coos, 151 U. S. 452; Home Ins. Co. v. Boatner (Tex. Civ. App.), 218 S. W. 1095; Rice v. Hartford Ins. Co. (Wash.), 97 Pac. 238; Cross v. Colonial Assurance Co., 56 Tex. Civ. App. 627, 121 S. W. 517; New Brunswick Fire Ins. Co. v. Morris Plan Bank (Va.), 118 S. E. 236; Arnold v. St. Paul Fire & Marine Ins. Co. (Tenn.), 61 S. W. 1032; Sugg v. Hartford (N. C.), 3 S. E. 732; Zwick v. Phoenix Ins. Co., 60 Iowa, 266, 14 N. W. 792; Van Alstyne v. Aetna (N. Y.), 14 Hun. 36; Perry v. Liverpool, etc., Ins. Co., 34 N. B. 380; Dickson v. Provincial Ins. Co., 244 C. C., p. 308.  (d)  Assuming that the Export policy was taken out without the knowledge or consent of plaintiff, he afterwards ratified it by making claim thereunder and is now estopped to claim that it was not a policy covering his interest.  Ferguson v. Pekin Plow Co., 141 Mo. 161; 21 R. C. L., pp. 919, 923.  (2)  The court erred in giving plaintiff's instruction for the reason that it submitted a question of law to the jury.  1 Randall's Instructions to Juries, page 172, sec. 89; Moody et al. v. Standard Wheel Co., 20 Ind. 422, 425; Turner v. Owen, 122 Ill. App. 501; Stoddart v. Nat'l Liberty Ins. Co., 251 S. W. 398.  (3)  The court erred in submitting to the jury the question of vexatious refusal to pay.  Non-Royalty Shoe Co. v. Phoenix Assurance Co., 277 Mo. 399; Patterson v. Ins. Co., 174 Mo. App. 44; Keller v. Ins. Co., 198 Mo. 440; Aufrichtig v. Co-

lumbian Nat'l, 249 S. W. 912; Goldbaum v. Great Eastern Cas. Co., 222 S. W. 868; Lafont v. Home Ins. Co., 193 Mo. App. 543; Zimmermann v. So. Surety Co., 241 S. W. 95; Agee v. Employers Liability Co., 253 S. W. 46; Miller v. Fireman's Fund Ins..Co., 206 Mo. App. 475; State ex rel. v. Allen, 295 Mo. 307.

*Clarence A. Barnes* for respondent.

(1)  (a)  The policy in suit did not make plaintiff a warrantor that there was no other insurance on the car.  The following clause as to warranties, doubtless an oversight of defendant in not setting it out in its abstract, reads: "The assured's occupation or business where the subject of this insurance is used in connection therewith, the description of the automobile insured, the facts with respect to · the purchase of same, the uses to which it is and will be put, and the place where it is usually kept, as set forth and contained in this policy, are statements of facts known to and warranted by the assured to be true, and this policy is issued by the Company relying upon the truth thereof."  (b)  Stipulations in policies in the nature of warranties or conditions are not to be captiously or literally construed, but are to be reasonably construed with reference to the subject-matter.  Wilson & Co. v. Hartford Fire Ins. Co., 254 S. W. 266. (c)  Clower did not have other insurance, as well as did not know of other insurance, and the so-called other insurance was a certificate issued under a master policy and which was not forwarded to Clower until long after the loss of his automobile, and consequently was not a warranty, was not intended by him as a warranty; and if a warranty was not such a warranty as required strict compliance.  Lieberman v. American Bonding & Casualty Co., 244 S. W. 102; Federal Ins. Co. v. Purvis Bros., 278 S. W. 581, 212 Ky. 107; Allen v. St. Paul Fire & Marine Ins. Co., 208 N. W. 816.  (d)  There was no ratification of the issuance of the Export Policy prior to the loss and there could not possibly be any estoppel growing out of it for the reason that the defendant appellant has not in any manner changed its position and it was not pleaded.  Federal Land Bank of Columbia v. Atlas Assurance Co., 188 N. C. 747, 125 S. E. 631; Turk v. Newark Fire Ins. Co.. 4 Fed. (2d) 142.  There was no "other insurance" within a proper meaning of the policy.  It was not taken out in the name of plaintiff, but in the name of a third party namely, "Commercial Credit Trust" and others.  And if taken out in the name of the assured without his authority is not "other insurance" within the meaning of this clause.  Church of St. George v. Sun Fire Office, 54 Mo. 162, 55 N. W. 909; Nelson v. Atlanta Home Ins. Co., 120 N. C. 302, 27 S. E. 38; Thompson v. National Fire Ins. Co., 203 N. W. 464.  Defendant's three answers waived the clause against

other insurance by pleading the co-insurance clause common to the standard form of policy but not contained in the policy sued on. Twice did they seek not only to Phoenixize the Export Insurance Co.'s liability, but reduce their own liability by reason thereof. It operated not only as a permit had it been part of the policy, but a ratification according to defendant's understanding of ratification, of co-insurance by plaintiff. (Although co-insurance in fact does not appear to exist). Richards on Insurance (3 Ed.) p. 324, sec. 254. (2) The instruction given on behalf of plaintiff was proper and did not submit a question of law to the jury. It merely was more favorable to defendant than it should have been, in that it permitted the certificate to be termed a contract of insurance, or the policy to be so designated. The jury never attempted to interpret the law of insurance, they understood contract of insurance to mean policy or certificate of insurance. If they were passing on a question of law they passed upon it as the trial court should have determined it, and the error if one was in favor of defendant. In any event it does not appear to be an error requiring a reversal and remanding of the case. (3) The court did not err in submitting to the jury the question of vexatious refusal to pay.

BENNICK, C.—This is an action on a policy of fire insurance, issued by defendant, insuring plaintiff's automobile against loss by fire and theft. The verdict of the jury was in favor of plaintiff, and assessed the amount of his recovery on the policy at the sum of $500, together with the sum of $50 as a penalty for vexatious delay, and the sum of $100 for attorney's fees. From the judgment rendered on such verdict, defendant, after an unavailing motion for a new trial, has duly perfected this appeal.

The petition was in conventional form, alleging that the policy was issued on August 1, 1924, whereby plaintiff's automobile was insured against loss by fire and theft to the amount of $500, for a term of one year; that on December 21st following, the said car was totally destroyed by fire; and that the car at the time was of the value of $500 or more.

Defendant's answer, in addition to a general denial, pleaded that, by the terms of the policy, plaintiff warranted that there was no other insurance covering the insured property, and that it was provided therein that no recovery could be had if, at the time of the loss, there was any other insurance covering such loss that would attach if such prior insurance had not been effected. It was then alleged that, at the date of the issuance of the policy in suit, and at the time of the fire, there was a policy covering the said automobile, issued by the Export Insurance Company, and that by reason thereof the policy in suit had become void. It was further averred that the

policy had been avoided by reason of the concealment by plaintiff of the fact of this other insurance.

Although no reply was filed, it appears that the case was tried as though the new matter in the answer was at issue.

The evidence disclosed that on June 26, 1924, plaintiff purchased from the J. E. Lyon Motor Car Company, of Mexico, Missouri, a Star coupe, the list price of which was $735, which sum included certain extra equipment, consisting of bumpers and an extra tire. It developed, however, that the total purchase price of the car was $781, the sum of $46 in excess of the list price representing a service charge covering the interest on the unpaid balance, and the premium on insurance to be taken out in conformity to certain provisions in the chattel mortgage. Plaintiff paid part cash, and gave his note to the J. E. Lyon Motor Car Company for $390.50, for the balance due with interest, and at the same time executed to such company a chattel mortgage on the car to secure payment of the note. By the terms of such chattel mortgage it was provided that the mortgagor should keep the automobile insured against loss or damage by fire and theft, the loss to be payable to said mortgagee, as the mortgagee's interest might appear, and that in case the mortgagor should neglect or refuse to obtain such insurance, the mortgagee might, at its option, obtain the same, all sums of money thus expended to be repayable upon demand from said mortgagor to said mortgagee.

On the same day, the J. E. Lyon Motor Car Company sold the note to the Commercial Credit Trust, a finance company with its principal offices in Chicago, Illinois, and also assigned to the latter all its right, title, and interest in and to said chattel mortgage and the property covered thereby. Thereafter, and as of June 26, 1924, the Commercial Credit Trust secured a contract of insurance from the Export Insurance Company, issued under a master policy, which covered the risk against damage or loss by fire and theft upon any and all cars on which the finance company held mortgages. Such contract purported to cover the risk on plaintiff's car to the extent of $580, and provided that the loss should be payable to the Commercial Credit Trust and others, although not enough of the policy was read into the record to disclose what parties the term "others" would include. It was the usual custom upon the issuance of a master policy for the finance company to send what was termed a certificate of insurance to each mortgagor, although in this case plaintiff did not receive such certificate, nor did he have any recollection of having been informed at the time he purchased the car that it would be covered by insurance.

On July 29, 1924, plaintiff paid the amount of the note in full to the J. E. Lyon Motor Car Company, by whom the proceeds were immediately transmitted to the Commercial Credit Trust, and thereupon plaintiff drove the car to Palmer, Illinois, where he took up

with one of defendant's agents the question of securing insurance on
his car from defendant company. On August 1, 1924, he obtained
the policy upon which this action was brought. At the time of pro-
curing same, plaintiff was unaware that there was other insurance
upon his car, and in his testimony he did not recall that defendant's
agent, in taking his application, had asked him about other insur-
ance. Subsequently, plaintiff returned to Missouri, and on Decem-
ber 21, 1924, his car was destroyed by fire in the city of Auxvasse,
having a salvage value thereafter of $10.

Shortly after the loss had occurred, plaintiff for the first time
learned of the outstanding insurance with the Export Insurance Com-
pany, and informed such company of his loss on or shortly before
January 19, 1925. However, the certificate of insurance from such
company was not obtained by plaintiff until in the following May.
The defendant company was also informed of the loss, and on Jan-
uary 21, 1925, one of its adjusters interviewed plaintiff relative to
the matter. It was in this interview that defendant first became
advised of the prior insurance in the Export Insurance Company.
The adjuster testified that during this discussion he informed plain-
tiff that he was entitled to the return of his premium, but it appears
that the premium was retained by defendant until September 14,
1925, when the same was deposited in court after this action had
been brought.

In the policy in suit there was the following condition and stipula-
tion:

"No rcovery shall be had under this policy if at the time a loss oc-
curs there be any other insurance covering such loss which would at-
tach if this insurance had not been effected."

The first point made and most earnestly urged by defendant is
that the court erred in refusing to give the peremptory instruction
in the nature of a demurrer to the evidence requested by it at the
close of the whole case. With commendable frankness learned counsel
state in their brief the essence of their contention, namely, that the
evidence showed conclusively that plaintiff had violated the clause
of the policy forbidding double insurance, and that there was no
attempt on his part to establish a waiver of such breach by defend-
ant. If such contention is well taken, plaintiff clearly may not re-
cover, because the law is well settled that additional insurance in
violation of the terms of the contract will avoid the policy, since
overinsurance by concurrent policies on the same property tends
to cause carelessness on the part of the insured, and opens the door
to fraud.

In determining the correctness of the court's ruling on the de-
murrer at the close of all the evidence, the rule to be applied is the
same as in other actions—that plaintiff must be given the benefit of
all evidence that was adduced in his behalf, as well as of all evidence

favorable to him offered by defendant, in addition to which he must be allowed the benefit of reasonable inferences of fact on all the proof. Moreover, plaintiff's evidence must be regarded as true, if not impossible, or entirely beyond reason, and defendant's evidence must be taken as false, where it is contradicted by that of plaintiff; and the court may not draw inferences of fact in defendant's favor to countervail or overthrow inferences tending to support plaintiff's cause of action.

To constitute insurance of the sort prohibited, both policies must be upon the same subject-matter, and upon the same interest therein. Both the mortgagor and the mortgagee have separate and distinct insurable interests in property covered by a mortgage, and, so long as the policy held by each covers only such respective interest, the provision in the policy against other insurance is not violated.

Though the above is the general rule, it has, nevertheless, been held, upon most respectable authority, that insurance procured by a mortgagee, covering his own and the owner's interests, *but obtained without the knowledge, consent, or authority of the owner*, is not such other insurance as to avoid a policy subsequently obtained by the owner himself. [Titus v. Glens Falls Insurance Co., 81 N. Y. 410; Doran v. Franklin Fire Insurance Co., 86 N. Y. 635; Cannon v. Home Insurance Co., 49 La. Ann. 1367, 22 So. 387; Cowart v. Capital City Insurance Co., 114 Ala. 356, 20 So. 574.]

This holding seems to be entirely logical and eminently fair. Applied to the facts of the case at bar, we find abundant testimony, though contradicted, that plaintiff was unaware of the existence of the policy taken out by the Commercial Credit Trust from the Export Insurance Company until long after his loss had occurred. Accordingly, leaving out of consideration the element of plaintiff's knowledge, if it is to be held that the Commercial Credit Trust obtained its policy of insurance with plaintiff's consent or authority (and assuming only for the sake of argument that it covered his interest), such conclusion must be reached by virtue of the provision in the chattel mortgage that plaintiff should keep the automobile insured, the loss to be payable to the mortgagee, as such mortgagee's interest might appear, and that, in the event plaintiff should neglect or refuse to obtain such insurance, the mortgagee might, at its option, obtain the same and add the amount of the premium therefor to the mortgage debt.

In construing such clause, however, the cases we have cited above hold in no uncertain terms that such clause is inoperative as affording authority to the mortgagee to secure insurance upon the owner's interest until such time as the owner is actually shown to have been in default after notice or demand. While it is true that plaintiff in the case at bar did not take out insurance at the time the purchase

was made and the chattel mortgage executed, it was not shown that any demand was made upon him to do so, and, furthermore, he had no opportunity to become in default in respect to such obligation, for the reason that the Commercial Credit Trust, the assignee of the mortgagee, obtained its policy of insurance as of the very day of the sale.

Accordingly, in its final analysis, the whole question resolves itself into one of agency. On demurrer it is our duty to believe plaintiff's testimony that the matter of insurance was not discussed with him at the time the car was purchased. But even under defendant's theory of the transaction, there is no contention that plaintiff himself was actually expected to obtain such policy. Thus, it does not conclusively appear that the Commercial Credit Trust was authorized, either under the chattel mortgage, in the absence of a default on plaintiff's part, or otherwise, to procure a policy of insurance covering plaintiff's interest in the car and upon his account. Furthermore, it was provided in the Export policy that upon the occurrence of loss the proceeds should be payable to the Commercial Credit Trust (whose insurable interest in the car, incidentally, had ceased to exist prior to the issuance of the policy in suit by reason of the fact that the mortgage debt had been extinguished), so that upon the authority of the cases cited herein, which to our minds represent the best thought upon the question, we are inclined to the view that such Export policy was in effect insurance by the Commercial Credit Trust upon its own interest and account, and that its act in having procured such policy cannot be so far regarded as the act of plaintiff as to have constituted a violation of the provision against other insurance in the policy issued by defendant.

Defendant, however, makes the further suggestion that, assuming that the Export policy was taken out without the knowledge or consent of plaintiff, he, nevertheless, afterwards ratified it by making claim thereunder, and is now estopped to argue that it was not a policy insuring his interest. The cases we have cited above dwell at considerable length upon this proposition. The fact is that plaintiff did nothing affecting the Export policy until after the rights and obligations of both parties to this action had become fixed by reason of the loss. We appreciate, however, that a contract of insurance made on behalf of an insured, though without authority, may be ratified by such insured, even after a loss has occurred, provided the insurer has not meanwhile withdrawn its previous assent, although so far as our search has disclosed, we have found this rule to have been applied only in those cases in which the insured was seeking to recover under the policy, the unauthorized procurement of which he was held to have ratified. But here the reason for the stipulation in the policy against other insurance had ceased. Plaintiff's conduct subsequent to the loss could have exerted no influence on the ac-

tion of defendant in respect to the creation or continuance of the risk, for the reason that the policy had matured by reason of the loss, and had ceased to exist except for the purpose of collection. The moral hazard was no longer to be considered, and these elements could not be restored by ratification. The logical conclusion is, therefore, that, if the fact of the original procurement of insurance by the Commercial Credit Trust did not render the contract sued on void at its inception, such fact could not, after the loss, have such operation by relation.

It follows, therefore, that, for the reasons expressed, the case was properly one for submission to the jury.

It is next argued that the court erred in giving to the jury plaintiff's main instruction covering his theory of the case. The complaint made is that this instruction erroneously submitted a question of law to the jury, in that it required the jury to find that at the time the policy in suit was issued by defendant "there was no prior existing contract of insurance on said car for plaintiff's benefit." There is no doubt that the essentials of a contract should be determined by the court, and that an instruction is subject to criticism, and in certain instances may be prejudicially erroneous, when it leaves it for the jury to say whether the undisputed facts in evidence, or the facts found by the jury from the evidence, constitute a contract. But in the particular instance before us, the existence of a prior contract of insurance was a matter of defense which it was incumbent upon defendant to prove, and, consequently, the unqualified characterization by plaintiff of the Export policy as a contract of insurance in so far as it may have affected him, was a concession upon his part, and rendered the instruction more favorable to defendant than it had the right to expect.

Certain other points with reference to the court's refusal to give instructions requested by defendant have been assigned as error, but, inasmuch as they have not been preserved by counsel in their brief and argument, they may be regarded as having been waived. [Mercantile Trust Co. v. Dulle (Mo. Sup.), 282 S. W. 414; Compton v. Louis Rich Construction Co. (Mo. Sup.), 287 S. W. 474; Sitts v. Daniel (Mo. App.), 284 S. W. 857.]

Finally, defendant urges that it was error to submit to the jury the issue of vexatious refusal to pay, and we cannot escape the conclusion that such objection is well taken. It is agreed that the penalty for vexatious refusal to pay should not be inflicted unless the evidence and circumstances disclose that such refusal was willful and without reasonable cause, as the facts would have appeared to a reasonably prudent person before the trial. [Non-Royalty Shoe Co. v. Phoenix Assurance Co., 277 Mo. 399, 210 S. W. 37; Berryman v. Southern Surety Co., 285 Mo. 379, 227 S. W. 96; Miller v. Fire-

man's Insurance Co., 206 Mo. App. 475, 229 S. W. 261; Zimmerman v. Southern Surety Co. (Mo. App.), 241 S. W. 95.]

In this case the evidence was conflicting as to plaintiff's knowledge of the existence of the Export policy, and that the same covered his interest at the time the policy in suit was obtained. Furthermore, it may not be denied that there is authority to support defendant's contention that the Export policy constituted such other insurance as to have avoided this policy. [Perry v. Liverpool & London & Globe Insurance Co., 34 N. B. 380.] Such being true, and, in view of all the circumstances in the case, we think that defendant had reasonable cause to refuse to pay the loss, and the right to litigate the questions involved, without being penalized for so doing. It follows, therefore, that the judgment is excessive to the extent of the allowance of $50 for vexatious refusal to pay, and $100 for attorney's fees.

Accordingly, the Commissioner recommends that, if plaintiff will within ten days remit the sum of $150, the judgment of the circuit court be reversed, and the cause remanded, with directions that a new judgment be entered in favor of plaintiff and against defendant in the sum of $500, with interest at the rate of six per cent per annum from March 17, 1926, the date of the original judgment; that otherwise the judgment be reversed, and the cause remanded for a new trial.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, reversed, and the cause remanded, with directions as recommended by the Commissioner, provided the plaintiff enters a remittitur of $150 within ten days; otherwise the judgment is reversed, and the cause remanded for a new trial. *Daues, P. J.*, and *Becker* and *Nipper, JJ.*, concur.