## COMMONWEALTH INS. CO. v. EVANS.

### No. 7640.

Court of Civil Appeals of Texas. Austin.
Oct. 14, 1931.

Rehearing Denied Nov. 4, 1931.

Thompson, Knight, Baker & Harris, Will C. Thompson, and Robert Lee Guthrie, all of Dallas, for appellant.

Collins, Jackson & Snodgrass, of San Angelo, for appellee.

McCLENDON, C. J.

Suit by Evans against the Insurance Company upon a fire insurance policy covering an automobile. The insurance company defended upon the allegation that the policy was void by reason of the existence of a prior policy issued by the St. Paul Company in violation of an express provision of the policy in suit. Evans recovered upon a special issue verdict, and the Insurance Company has appealed.

The St. Paul policy was taken out by Chain Investment Company, who held a chattel mortgage upon the automobile, and it was Evans' contention (which the jury findings sustained) that it was taken out without his authority, knowledge, or consent, and was therefore not additional insurance within the stipulation relied upon.

We hold the evidence sufficient to support the following fact findings:

The car was purchased in 1928, and as part of the consideration Evans gave a chattel mortgage for $1,400, which was carried by John W. Six Motor Company. There was a policy covering the car held by the Six Company which appears either to have expired or to have been canceled on May 27, 1929. On that day the mortgage debt was refinanced by Chain Investment Company, of which Horton and Yaggy (who were also local agents for the St. Paul Company) were officers. Horton conducted the negotiations with Evans in which it was understood there should be no insurance written. A new note and chattel mortgage were executed. This note was for $1,481.05, which amount was made up of $1,396.22 paid to the Six Company and $84.83 "service charges." The books of the Chain Company showed that this latter amount included an item of $16.80 to cover premium on fire and theft insurance, which was inserted under these circumstances: The papers in the transaction were passed to Yaggy's desk, who did not know the understanding between Evans and Horton, and according to his custom he issued the St. Paul policy which was in favor of Evans, with loss payable clause to the Chain Company; and he included the premium in the service charges. Evans paid off the mortgage in September, 1929, and all the papers in connection with the loan, including the policy, were mailed to him. He, however, did not look through the papers to ascertain their contents; and had no actual knowledge of the existence of the policy until after the fire, when he was informed by appellant's adjuster that there was another policy on the property; and at the request of the adjuster he looked through the papers and discovered the St. Paul policy among them. Some time in November or December, 1929, after the Chain Company's mortgage had been paid off, Evans had a conversation with the bookkeeper of the Six Company, with a view of making a new loan on the car. At Evans' request, the bookkeeper rang up Horton and inquired whether there was a policy on the car, and was informed by Horton that there was not. The policy in suit was written February 5, 1930, and the loss occurred February 17, 1930.

The evidence is somewhat obscure in some respects, and isolated portions of Evans' testimony present some apparent conflicts with other portions of his testimony. Appellant contends, in this connection, that it is apparent that Evans knew of the St. Paul policy either at the time it was issued or thereafter and before the fire; and he therefore ratified its issuance by not repudiating it. Evans' testimony is positive and unequivocal that he had no knowledge of the existence of the St. Paul policy until after the fire, and his testimony as a whole is not inconsistent with this statement. The issues raised in this regard concern the credibility and weight of testimony, which lie exclusively within the province of the jury, and have no bearing upon the probative force of the evidence.

The authorities quite uniformly hold that: "If additional insurance is taken out on property, without the consent or knowledge of the insured, and there is no acquies-

cence in or ratification of it by him, such insurance is not a violation of a clause in the insurance policy making additional insurance a ground of forfeiture of the policy." 14 R. C. L. 1137.

The following Texas cases are in point: Phœnix Ins. Co. v. Hague (Tex. Civ. App.) 34 S. W. 654; Ginners' Mut. Underwriters v. Wiley & House (Tex. Civ. App.) 147 S. W. 629. See, also, 26 Corp. Jur. pp. 188, 189; 5 Ency. of Ins. Law, p. 3658, § 1049; 2 Cooley's Brief on Insurance (2d Ed.) p. 2292.

■ Appellant contends that, regardless of Evans' actual knowledge, the St. Paul policy was binding upon him because issued by his duly authorized agents under a stipulation in the mortgage whereby he agreed to keep the property insured with loss payable to mortgagee, "and in case said mortgagor shall neglect or refuse to obtain said insurance * * * then said mortgagee may at said mortgagor's option obtain such insurance," and charge the cost to the mortgagor.

In 1880 the New York Court of Appeals, in the well-considered case of Titus v. Glens Falls Ins. Co., 81 N. Y. 410, made the following holding: "It is true that Merrill's [mortgagor's] mortgage contained a clause providing that he should keep the mortgaged buildings insured, and assign the policy to the plaintiff [mortgagee], and that in case of default on his part, the plaintiff might procure such insurance at his expense and add the amount paid therefor to the mortgage. But that clause could not operate until there was default on the part of Merrill, and he could be put in default only upon refusal or neglect to procure the insurance after some sort of notice or demand."

This case has been repeatedly followed. Cannon v. Ins. Co., 49 La. Ann. 1367, 22 So. 387; Clower v. Ins. Co., 220 Mo. App. 1112, 296 S. W. 257; Carpenter v. Ins. Co., 61 Mich. 635, 28 N. W. 749; Cowart v. Ins. Co., 114 Ala. 356, 22 So. 574.

We follow the holding as being both sound in principle and well sustained by high authority.

■ Here there was not only no neglect or refusal on Evans' part; but there was an express understanding that no insurance was to be taken out. However, this understanding arose, whether from mistake or otherwise (no fraud being shown), the authority of the mortgagee to procure insurance binding upon Evans could not arise until after "some sort of notice or demand," which was never given or made.

■ Of course, the Chain Company, independently of authority conferred in the mortgage, had the right to insure its own interest in the property as mortgagee. But that would not have constituted additional insurance within the meaning of the policy. Camden Fire Ins. Co. v. Sutherland (Tex. Civ. App.) 278 S. W. 907; Home Ins. Co. v. Koob, 113 Ky. 360, 68 S. W. 453, 58 L. R. A. 58, 101 Am. St. Rep. 354; 14 R. C. L. p. 1138, § 320; 5 Cyclopedia of Ins. p. 3634, § 1039, and p. 3665, § 1053. In so far, however, as the St. Paul policy covered Evans' interest in the car, it was, under the testimony and jury findings, unauthorized and not binding, and did not constitute other insurance within the meaning of the policy in suit.

■ Error is predicated upon admission of Evans' testimony to the effect that in the telephone conversation above Horton told the Six Company's bookkeeper there was no insurance on the car. Evans only heard what was said by the bookkeeper, and it was from what he reported at the time that Evans obtained his knowledge. The objection was that the evidence was hearsay. Since Horton himself gave the same testimony and there was no conflict in the evidence upon the subject, the error, if any, was harmless.

■ Evans testified that the cash value of the car immediately before the fire was $1,800. This evidence was objected to because it did not fix the place where the car had such value. In laying the predicate for this testimony, it clearly appears that Evans' knowledge regarding value was limited to the vicinity where the loss occurred. Had there been substantial doubt upon the matter, appellant might readily have removed such doubt by cross-examination. Additionally, the evidence was only cumulative, and therefore harmless, since there was ample additional testimony from apparently disinterested witnesses to support the jury's finding ($1,575) of value.

The above holdings dispose of all but two (fifth and sixth) of appellant's assignments of error. These are manifestly without merit, and we overrule them without discussion.

The trial court's judgment is affirmed.

Affirmed.